MARIA FRANCESCO GIOVIO and JOHN GRECO, as Administrators, etc., of NICHOLAS GIOVIO, Deceased, Respondents, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

First Department, January 26, 1917.

Railroads — negligence — when employee not engaged in interstate commerce — coaling switch engine in railroad yard — negligence of fellow-servant.

A person employed in a railroad yard to place coal in the tender of a switch engine used solely within the yard for moving cars from one place to another was not engaged in interstate commerce, although the engine was used in switching cars engaged in interstate as well as intrastate commerce indiscriminately as occasion might require, and had been used on the day of the accident only in switching cars used in interstate commerce.

Hence, where he was killed by the negligence of a fellow-servant there can be no recovery for his death for he was not entitled to the benefits of the Federal statute.

The person driving said switch engine and who negligently killed the plaintiff's intestate by starting the engine when he knew the intestate was trying to alight therefrom, with the result that he was crushed between the tender and the side of a round house door, was the fellow-servant of the intestate and the defendant railroad company is not liable for the death.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the Supreme Court in favor of

the plaintiffs, entered in the office of the clerk of the county of New York on the 6th day of June, 1916, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 16th day of June, 1916, denying defendant's motion for a new trial made upon the minutes.

*Robert A. Kutschbock,* for the appellant.

*Frank F. Davis,* for the respondents.

SCOTT, J.:

The action is for damages for the death of plaintiffs' intestate, resulting from the negligent act of a fellow-servant.

The facts as the jury might have found them on the evidence, and, judging from the verdict, undoubtedly did find them, were that deceased had been for three months before the accident which caused his death, employed by defendant upon the coal pockets at the railroad yard at Weehawken, N. J., in which is stored coal for the use of defendant's steam locomotives. His brother, Giovanni Giovio, worked with him at the same place. A part of their work was to coal the engines as required, and at other times they shoveled coal from cars into the chutes. Immediately before the accident the brothers Giovio had been engaged in coaling a switch engine which was used solely within the yard in moving cars from one place to another, and in its work it moved cars engaged in interstate as well as in intrastate commerce indiscriminately as occasion might require. It also hauled coal trains which came into the yard. As it happened it had been used on the day of the accident only in moving cars used in interstate commerce, and was so used on the following day. Before the accident happened the switch engine having finished its work for the day had dumped its fire in an ash pit, had taken water into its boiler and then proceeded to the coal chute to obtain coal. In the operation of coaling deceased stood on the tender of the engine, while his brother operated the chute from above. As soon as the coaling was finished the "hostler," or yard engineer, in charge of the engine started towards the roundhouse without waiting for deceased to alight, but in response to a call from deceased he promised to stop later and let him off. He did stop for a

very short time on the turntable immediately in front of the roundhouse, and deceased attempted to alight. The hostler, however, without waiting to see whether deceased had reached a place of safety started the engine, with the result that the deceased was crushed and killed between the tender and the side of the roundhouse door. This made out a case of negligence on the part of the hostler who was running the switch engine, and who was clearly a coservant of the deceased. The question in the case upon which depends the defendant's lia· bility is whether or not the deceased was employed at the time of his death in interstate commerce. If he was, the coservant rule does not apply and defendant is liable.

There has been much discussion as to when an employee of a railroad company is, and when he is not employed in interstate commerce, and it would not be easy to reconcile logically all of the cases dealing with that question. We do not consider it necessary to undertake to do so, because as we consider the present case is determinable by certain very recent decisions of the Supreme Court of the United States, the final authority upon the subject.

In *Shanks* v. *D., L. & W. R. R.* (239 U. S. 556) the court by Mr. Justice VAN DEVANTER stated the test of employment in interstate commerce as follows: "Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (See *Swift & Co.* v. *United States*, 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it. * * *.

"Without departing from this test, we also have held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars, all loaded with intrastate freight, from one part of a city to another (*Ill. Cent. R. R.* v. *Behrens*, 233 U. S. 473), and where an employé in a

colliery operated by a railroad company is mining coal intended to be used in the company's locomotives moving in interstate commerce. (*Del., Lack. & West. R. R.* v. *Yurkonis*, 238 U. S. 439.) In neither instance could the service indicated be said to be interstate transportation or so closely related to it as to be practically a part of it."

In *Chicago, B. & Q. R. R.* v. *Harrington* (241 U. S. 177) the deceased was one of a switching crew, which did not itself work outside the State, but which was engaged at the time of the accident in switching coal belonging to defendant from a storage track, upon which it had been standing for some time, to a coal shed where it was to be placed in bins or chutes and supplied, as needed, to locomotives of all classes, some of which were engaged in or about to be engaged in interstate and others in intrastate traffic. Mr. Justice HUGHES, writing for the court, said: "With the movement of the coal to the storage tracks, however, we are not concerned; that movement had long since ended, as it is admitted that the coal was owned by the Company and 'had been in storage in its storage tracks for a week or more prior to the time it was being switched into the coal chutes on the morning of the accident.' So, also, as the question is with respect to the employment of the decedent at the time of the injury (*Illinois Central R. R.* v. *Behrens*, 233 U. S. 473, 478), it is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed. That duty was solely in connection with the removal of the coal from the storage tracks to the coal shed, or chutes, and the only ground for invoking the Federal Act is that the coal thus placed was to be used by locomotives in interstate hauls.

" As we have pointed out, the Federal Act speaks of interstate commerce in a practical sense suited to the occasion and 'the true test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it.' *Shanks* v. *Del., Lack. & West. R. R.*, 239 U. S. 556, 558, and cases there cited. Manifestly, there was no such close or direct relation to inter-

state transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use. It has been held that an employee of the carrier while he is mining coal in the carrier's colliery intended to be used by its interstate locomotives is not engaged in interstate commerce within the meaning of the Federal Act (*Del., Lack. & West. R. R.* v. *Yurkonis,* 238 U. S. 439), and there is no distinction in principle between the two cases. In *Great Northern Ry.* v. *Knapp,* 240 U. S. 464, the question whether the employee was engaged in interstate commerce was not presented, as the application of the Federal statute was conceded in the State court." (Pp. 179, 180.)

Applying the rule stated in the foregoing cases it seems to be apparent that the plaintiffs' decedent, when he came to his death, was not engaged in interstate commerce or in any work so closely related to it as to be practically a part of it.

The respondent, however, urges upon us the argument that because the engine upon which deceased was working immediately before his death was at times engaged in hauling cars engaged in interstate commerce it was an instrument of such commerce, and hence that deceased was engaged in interstate commerce, and reference is made to cases in which bridges and switches used both for interstate and intrastate commerce are held to be instrumentalities of interstate commerce, and men working upon them are held to be engaged in interstate commerce. That argument is answered by a very recent opinion of Mr. Justice HOLMES, writing for the Supreme Court of the United States. (*Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353.) The learned justice said: "The plaintiff was making repairs upon an engine. This engine 'had been used in the hauling of freight trains over defendant's line, * * * which freight trains hauled both intrastate and interstate commerce, and * * * it was so used after the plaintiff's injury.' The last time before the injury on which the engine was used was on October 18 when it pulled a freight train into Marshalltown, and it was used again on October 21, after the accident, to pull a freight train out from the same place. That is all that we have, and is

not sufficient to bring the case under the act. This is not like the matter of repairs upon a road permanently devoted to commerce among the States. An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time not upon remote probabilities or upon accidental later events."

Applying the cases from which we have quoted to the facts of the present case we are constrained to hold that plaintiffs' intestate was not engaged at the time of his death in interstate commerce; that the coservant rule applies and that defendant is not liable for the negligence of the driver of the switch engine.

It follows that the judgment appealed from must be reversed and the complaint dismissed, with costs to the appellant in this court and the court below.

CLARKE, P. J., McLAUGHLIN, PAGE and DAVIS, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.