MICHELE PALERMO, Respondent, v. ERIE RAILROAD COMPANY, Appellant.

Second Department, December 27, 1918.

Railroads — negligence — action under Federal Employers' Liability Act — when employee injured while preparing engine for next day's run is engaged in interstate commerce — when question whether engine is used in interstate commerce one of fact — distinction between repair work on track or bridge or tunnel and upon locomotive — apportionment of damages on finding of contributory negligence — erroneous submission to jury of one of two questions of negligence — assumption of risk.

Where, in an action under the Federal Employers' Liability Act, it appears that the defendant was engaged in interstate commerce, it is necessary for the plaintiff to establish that he also at the time of the injury was employed in interstate commerce.

Where, in such an action, it appears that on the day of the accident a locomotive of the defendant arrived at a point in this State on its return trip from an adjoining State and was delivered by the engineer to a repairer or hostler who took it to an ashpit where it was made ready for the next day's run, and then took it to a storage track, and while placing it on said track and coupling it, for what purpose does not appear, to another engine, the plaintiff through the alleged negligence of another employee was injured; that on the following day the locomotive was placed on the same run where it was used every day in the month except when in the repair shop, and that, although said engine was generally used on an express train between the point in this State and the adjoining State, there was evidence that it could have been used for switching, it was a question for the jury whether or not the engine was regularly devoted to the work of drawing the express train and thereby used in interstate commerce.

The rule that an employee engaged in repairing a bridge or track that is necessarily used for interstate commerce is himself engaged therein, does not apply, where said employee is engaged in construction work which has not at that time been devoted to interstate commerce.

The distinction between repair work on a track or bridge or tunnel and upon a locomotive depends upon the fact that one is necessarily devoted to interstate commerce and the other is not; but if it can be shown that the locomotive is devoted to interstate commerce any work in repairing it for the run is directly concerned with interstate commerce.

A submission to the jury of one of two questions of negligence for which there is no basis in the evidence, constitutes error because of the rule of apportionment of damages on a finding of contributory negligence. When the jury compares the amount of the plaintiff's contributory negli-

gence with the negligence of the defendant, it makes a substantial difference whether the defendant was negligent in two particulars or in one.

It was error to submit to the jury the question as to whether there was negligence on the part of the defendant's servant who was operating the engine in not having a light on the rear which was a proximate cause of the plaintiff's injury, where it appears that when the engine had reached a point sixty feet from an engine which was standing on the track and to which it was to be coupled, plaintiff jumped from the tender taking the light with him and leaving dark the forward part of the tender as it approached.

Under the circumstances, the plaintiff assumed any risk he might run from the danger caused by the absence of the light, for he knew all about the situation, and his jumping from the tender with the light created the condition of which he complains.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Orange on the 8th day of February, 1918, upon the verdict of a jury for $6,000, and also from an order entered in said clerk's office on the 2d day of February, 1918, denying defendant's motion for a new trial made upon the minutes.

The action was brought under the Federal Employers' Liability Act for negligence which resulted in the loss of plaintiff's hand. The case was submitted to the jury upon special findings. The jury found both the plaintiff and the defendant negligent, that the total amount of plaintiff's damage was $8,000, and that it should be reduced by the sum of $2,000 for the negligence of the plaintiff, leaving a recovery of $6,000.

*Elbert N. Oakes* [*Thomas Watts* and *John Bright* with him on the brief], for the appellant.

*J. D. Wilson, Jr.,* for the respondent.

BLACKMAR, J.:

The action was brought under the Federal Employers' Liability Act. As the defendant was engaged in interstate commerce it was necessary for the plaintiff to establish that he also at the time of the injury was employed in interstate commerce. He was then engaged in placing a locomotive,

which had come into Newburgh from Jersey City, on a storage track at West Newburgh. The solution of the question of whether the plaintiff was at the time of his injury engaged in interstate .commerce turns upon the question whether the locomotive was an instrumentality being used at the time in interstate commerce.

On the day in question the locomotive, known as No. 545, arrived at Newburgh on its return trip from New Jersey at eight-six P. M., and was delivered by the engineer to an engine repairer or hostler, who took it to West Newburgh and delivered it at an ashpit. There the fires were cleaned, coal, water and sand were put in, and the engine was made ready for the next day's run. From the ashpit it was taken to a storage track; and while placing it on the storage track and coupling it, for what purpose does not appear, to another engine standing on the track, the plaintiff, through the negligence, as the jury have found, of another employee of defendant, suffered injuries that resulted in the loss of a hand. On the following day the locomotive was put back on the same run, and it was on that run every day in the month except when in the repair shop. The defendant called its foreman, who testified that " these engines " could be used for any purpose, that in the case of an emergency they could be used for switching, and that they had been so used. But generally this engine was used on what was known as the Tuxedo Express between Newburgh and Jersey City. The presiding justice treated this as a question of law and decided that the plaintiff, in aiding to put the locomotive on the storage track, was engaged in interstate commerce. To this the defendant excepted.

The appellant relies principally on *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 U. S. 353, Holmes, J.); *Giovio* v. *New York Central Railroad Co.* (176 App. Div. 230, Scott, J.), and *Central R. Co.* v. *Paslick* (239 Fed. Rep. 713); the two latter cases being decided largely on the authority of the one first cited. In the *Winters* case the plaintiff was injured in repairing an engine on October 21, 1912. The last time the engine had been used before the injury was on October eighteenth, when it hauled into Marshalltown, Iowa, a train carrying both interstate and intrastate

commerce. On October twenty-first, after the plaintiff's injury, it was used in hauling a train also carrying both interstate and intrastate commerce out of Marshalltown. It was held that in repairing the engine the plaintiff was not engaged in interstate commerce. A distinction was drawn between a locomotive that is not permanently devoted to any kind of traffic and a roadbed or bridge permanently devoted to interstate traffic. Justice HOLMES said: "An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. * * * Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

It has been established by the decisions of the United States Supreme Court that an employee engaged in repairing a bridge or track that is necessarily used for interstate commerce is himself engaged in interstate commerce. (*New York Central R. R.* v. *Carr,* 238 U. S. 260; *Pedersen* v. *Del., Lack. & West. R. R.,* 229 id. 146.) But it seems that this rule does not apply where they are engaged in construction work which has not at that time been devoted to interstate commerce — for instance, in building a new tunnel that has not yet been used. (*Raymond* v. *Chicago, M. & St. P. R. Co.,* 243 U. S. 43.) The distinction between repair work on the track or bridge or tunnel and repair work upon the locomotive depends upon the fact that one is necessarily devoted to interstate commerce and the other is not; but if it can be shown that the locomotive is devoted to interstate commerce, I think that any work in preparing it for the run would be directly concerned with interstate commerce. In *North Carolina R. R. Co.* v. *Zachary* (232 U. S. 248) it was held that the acts of the defendant in error, in inspecting, oiling, firing and preparing his engine for a trip outside the State, were acts performed as part of interstate commerce, and the circumstance that the interstate freight cars had not yet been coupled is legally insignificant. In *St. Louis & San Francisco Ry.* v.

*Seale* (229 U. S. 156) it was held that after a train carrying interstate commerce had arrived at the station, the work of breaking up the train and moving the cars to the appropriate tracks for making up new trains for further destination, or for unloading, was as much a part of interstate transportation as the movement across the State line. In *Johnson* v. *Southern Pacific Co.* (196 U. S. 1), where the question was regarding the automatic couplers upon cars used in moving interstate commerce, it was held that where a dining-room car was regularly used in interstate commerce and had ended one trip and was waiting for another, it was still subject to the law regarding automatic couplers. In *Erie R. R. Co.* v. *Winfield* (244 U. S. 170) it was held that a switchman engaged in switching, being through work and crossing the tracks on his way out of the yard, was still engaged in interstate commerce. In *Darr* v. *Baltimore & O. R. Co.* (197 Fed. Rep. 665) it was held that the repair of a locomotive regularly and usually employed in interstate commerce was within the act.

I think that if the locomotive in question was regularly devoted to the work of drawing the Tuxedo Express from Newburgh to Jersey City and back to Newburgh, and so in interstate commerce, then everything that was done incidentally to this use of the locomotive was also directly related to interstate commerce. The work of the locomotive was such that it had to be stored during the night. It had to be prepared for its run. It was impossible to leave it standing on the track at Newburgh. It had to have coal, water and sand, and the fires had to be attended to; and if permanently devoted to that run, all of the work of taking care of the engine over night and preparing it for its next day's work was just as much interstate commerce as drawing the cars from Newburgh to Jersey City. On the other hand, if this locomotive was not, in the regular course of business, assigned to this run, and its use next day undetermined when it was laid up for the night, then the doctrine of the *Winters Case* (*supra*) would govern.

I am of opinion that this presented a question of fact. The fact that it was used day by day in this work was evidence that it was permanently devoted to it. The inference that it

was so permanently devoted to interstate commerce is permissible from the evidence, but I think it does not necessarily flow therefrom and that the question should have been submitted to the jury.

I now come to a question that, so far as I know, has not been decided. The trial judge submitted two questions to the jury as to the defendant's negligence. If the jury found either one of these questions in the affirmative a verdict for the plaintiff would be justified. The jury answered both in the affirmative, finding that the defendant was negligent in two respects: *First,* in not having a light on the rear of the tender when backing up upon the storage track, and, *second,* in not stopping in response to the plaintiff's signal. I think that there was no basis in the evidence for the submission of the first question. This would be entirely harmless except for the law of apportionment of damages on a finding of contributory negligence. If there was no such rule as that, the finding on the second question would sustain the verdict, and that on the first question would be immaterial; but as there is such a rule it is obvious that when the jury compare the amount of the plaintiff's contributory negligence with the negligence of the defendant it makes a substantial difference whether the defendant was negligent in two particulars or in one. The rule is that " where the causal negligence is attributable partly to the carrier and partly to the injured employé, he shall not recover full damages, but only a diminished sum bearing the same relation to the full damages that the negligence attributable to the carrier bears to the negligence attributable to both." (*Seaboard Air Line* v. *Tilghman,* 237 U. S. 499.) In order that the jury may properly apply this rule they must have the proper factors. As we have eliminated one of the factors which they presumably used, there must be a new trial.

The question submitted to the jury was as follows: " Was there negligence on the part of the defendant's servant who was operating engine No. 545 in not having a light on the rear of said engine, which was a proximate cause of the plaintiff's injury? " There was some evidence that it was the duty of the hostler in charge of the engine to see to the lights on the engine. This engine was in charge of a fellow-employee

of the plaintiff, a hostler, and the plaintiff. It was backing down the storage track. Plaintiff stood on the tender with a lantern in his hand. When he had reached a point sixty feet from an engine which was standing there, and to which it was to be coupled, he jumped down, taking the light with him and leaving dark the forward part of the tender as it approached. Under these circumstances the plaintiff knew all about the situation of the locomotive. He testified that notwithstanding there was no light he saw the locomotive. He saw it when it was fifteen feet away, for he waved his lantern as a signal to the engineer to stop. He saw it when it was ten feet away, according to his own evidence, when it looked as if it had stopped.

It is undoubtedly the duty of a railroad company to give warning, either by light or sound or in some other way, when it is moving its locomotive in a yard where employees are apt to be at their work, so that those whose duty may call them upon the track shall have notice of its approach. I cannot see how the absence of a light on this locomotive can be negligence as to the plaintiff, and I think it plain that the plaintiff assumed any risk he might run from the danger caused by the absence of the light, for he knew all about the situation, and in fact his very act in jumping down with the light in his hand created the condition of which he complains. It was error, therefore, to submit to the jury the first question regarding the defendant's negligence.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., THOMAS, RICH and JAYCOX, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.