Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Award of Funeral Expenses of EDWARD GUIDA, Respondent, under the Workmen's Compensation Law, on Account of the Death of MICHAEL PANELLA, *v.* PENNSYLVANIA RAILROAD COMPANY, Employer and Self-Insurer, Appellant.

Third Department, July 1, 1918.

Workmen's Compensation Law — interstate commerce — test of employment in — injury to laborer while cleaning boiler used to generate current for operation of both intrastate and interstate trains.

The Federal Employers' Liability Act speaks of interstate commerce not in a technical legal sense, but in a practical one, making the true test of such employment whether the employee at the time of the injury was engaged in interstate transportation or in a work so closely related to it as to be practically a part of it.

Where a railroad company maintained boilers at a point in this State in which it produced steam necessary to operate electricity producing machinery, from which it supplied power to both intrastate and inter-

state trains, such boilers are indispensable instrumentalities of interstate commerce, and a common laborer injured while removing soot from one of the boilers was injured in interstate commerce, within the meaning of the Federal Employers' Liability Act, and hence is not entitled to an award under the Workmen's Compensation Law.

KELLOGG, P. J., dissented.

APPEAL by the defendant, Pennsylvania Railroad Company, from an award of the State Industrial Commission, entered in the office of said Commission on the 19th day of November, 1917.

*Burlingham, Montgomery & Beecher* [*Ray Rood Allen* and *Samuel C. Coleman*, of counsel], for the appellant.

*Merton E. Lewis, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], and *Robert W. Bonynge*, counsel to the State Industrial Commission, for the respondents.

LYON, J.:

The appellant bases its appeal upon the contention that at the time the deceased sustained the injuries which resulted in his death he was engaged in interstate commerce, and hence the State Industrial Commission was without jurisdiction to make the award.

The appellant owned and operated a motive power electric plant at Long Island Station, Long Island City, N. Y., by which it operated the Long Island railroad situated wholly within the State of New York, and the portion of the Pennsylvania railroad system from Sunnyside Yard on Long Island to Manhattan Transfer in New Jersey. At such plant it maintained thirty-six boilers in which it produced the steam necessary to operate the electricity producing machinery. The electrical power was supplied to both railroads through a common source furnishing an indivisible supply to operate both roads, and was used in both interstate and intrastate commerce. The appellant was also engaged in repairing its plant, its stationary engines, boilers, dynamos, appliances and transmission lines. Not all the thirty-six boilers were in use at any one time, but it was customary and necessary after a boiler had been in operation for six or eight weeks to shut it down for the purpose of removing the soot from it, and making any needed repairs.

In May, 1917, Michael Panella, the deceased, was a common laborer in the boiler-room of appellant's said plant. At that time twelve of the thirty-six boilers had been temporarily withdrawn from active service in order that they might be freed of soot and repaired. Steam was in the meantime being furnished by the remaining twenty-four boilers which were sufficient for that purpose. While the deceased was necessarily within one of the idle boilers engaged in the regular course of his employment of removing soot from the boiler, hot soot fell upon him and so badly burned him as to cause his death. The State Industrial Commission, holding as a conclusion of fact that at the time of the accident the deceased was not engaged in interstate commerce, and as a ruling of law that the claim came within the State Workmen's Compensation Law, made the award appealed from of one hundred dollars on account of burial expenses. Any claim for compensation on account of the dependency of the widow and children of the deceased, who were alien non-residents, was held in abeyance pending the presentation of a claim in their behalf.

The vital question presented is whether at the time of sustaining the injury the deceased was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143). That statute speaks of interstate commerce, not in a technical legal sense, but in a practical one, making the true test of such employment whether the employee at the time of the injury was engaged in interstate transportation, or in a work so closely related to it as to be practically a part of it. (*Shanks* v. *Del., Lack. & West. R. R.*, 239 U. S. 556, 558.) In *Pedersen* v. *Del., Lack. & West. R. R.* (229 U. S. 146) it was held that a bridge was a necessary instrumentality of commerce and that a person engaged in taking to the bridge bolts with which to repair it was engaged in interstate commerce. In *New York Central R. R. Co.* v. *Winfield* (244 U. S. 147) it was held that a section hand who lost his eye by being struck with a pebble while tamping a cross tie was engaged in interstate commerce. The track consisting of the rails and ties was an instrumentality of commerce. In *Grybowski* v. *Erie R. Co.* (88 N. J. L. 1; affd., 89 id. 361)

it was held that an employee engaged in cleaning out an ash pit under the track into which locomotives employed in both interstate and intrastate commerce dumped ashes, was engaged in interstate commerce, as the keeping of the ash pit clean was required by both kinds of commerce.

In the case at bar the boiler plant was an instrumentality of commerce along with the dynamos which generated the electric current, and the engines by means of which the current was made of service. The work of deceased related to the maintenance of an instrumentality permanently devoted to carrying on interstate commerce. In this respect the present case differs radically from several of those cited by the respondent. The twelve boilers which were temporarily idle were an indispensable part of the boiler plant, as it was only by freeing them of soot and making the necessary repairs, which could be made only when the boilers had been temporarily withdrawn from active service, later substituting them for twelve boilers then in use, that the efficiency of the plant could be maintained, and the transportation system operated. Freeing the boilers of soot was as necessary to make them effective as making needed repairs. The deceased was, therefore, injured while engaged in restoring to efficiency one of the units of an indispensable instrumentality of interstate commerce. He was employed in interstate commerce equally with the employee who was carrying bolts with which to repair the bridge and the employee who was tamping the ties. At these times neither the bridge nor the track at the place of injury was in actual use by interstate trains. Like the boiler they were at the places of injury instrumentalities of interstate commerce, and not less such during temporary periods when they were out of actual use.

The fact that the appellant was also operating intrastate as well as interstate trains has no bearing upon the question at issue. This was expressly held in both the *Pedersen* and *Winfield* cases. In fact, in the former case the injury was inflicted by an intrastate train. Keeping the boiler in effective condition was required equally in interstate and intrastate commerce. In *Erie R. R. Co.* v. *Winfield* (244 U. S. 170, 173) it was held that an engineer who had been at work during the day switching cars engaged in both interstate and intrastate

commerce, and who was injured while crossing a track on his way from his work after having placed his engine where it was to remain for the night, was still engaged in interstate commerce. The case of *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 U. S. 353, 356) is not in point. In that case the engine being repaired, during the process in which the plaintiff was injured, had been engaged in interstate commerce before the injury and was so used afterwards, but the court held that there was nothing to show that it was permanently or specially devoted to such commerce or assigned to it at the time the employee was injured, and hence that it was not a case within the Federal Employers' Liability Act.

I conclude it must be held that deceased was engaged in interstate commerce at the time he was injured, and hence that the award must be reversed, and the claim dismissed.

All concurred, except JOHN M. KELLOGG, P. J., dissenting.

Award reversed and claim dismissed.