FRED LINDSTROM, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, January 15, 1919.

**Railroad — negligence — injury to employee engaged in cleaning fireboxes of locomotives used in interstate commerce — when employee entitled to protection of Federal Employers' Liability Act.**

Where the duty of a railroad employee was to clean fireboxes on locomotives at the conclusion of their day's run in preparation for the next day's run, which locomotives were used both in interstate and intrastate commerce, and he was injured by a collision while riding on the defendant's engine to the place in this State where he was required to clean the engines daily, the jury were justified in finding that he was engaged in interstate commerce and was under the protection of the Federal statute.

As the master provided the means by which the plaintiff was to reach his work, he was engaged in performing a duty of his employment while riding on the engine to the ashpit.

The plaintiff while engaged in cleaning engines at the dump pit was engaged in interstate commerce where the engines were used indiscriminately in interstate and intrastate commerce.

FOOTE, J., dissented.

APPEAL by the defendant, New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ontario on the 17th day of May, 1918, upon the verdict of a jury for $1,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Harris, Beach, Harris & Matson* [*Paul Folger* of counsel], for the appellant.

*W. Smith O'Brien,* for the respondent.

HUBBS, J.:

For three weeks before the accident in question the plaintiff had been employed in cleaning fires on locomotives, cleaning out the ashpans and coaling the locomotives, at the conclusion of their day's run, in preparation for the next day's run.   He also had been engaged in cleaning out the ashdump.   After a locomotive has been used all day there is an accumulation of clinkers and dirt from the coal, and that has to be removed,

the ashpan cleaned, and a fresh fire put in for the next day so that the locomotive will steam properly. That work has to be done every day.

On the night of the accident the plaintiff went from his home at Phelps on a passenger train to Geneva and left the train at the Y tower near the ashpit at Geneva, where engines were usually cleaned. That ashpit had been out of repair for three weeks and during that time the locomotives in use at that point had been taken to Thompsons to be cleaned. There were two engines at the Y tower to be cleaned when plaintiff arrived there. The plaintiff and a companion boarded those engines to go to Thompsons to clean and coal them as they had been doing for three weeks before. That was the way provided by the defendant to get the plaintiff from Geneva to the ashpit at Thompsons.

The plaintiff was riding on engine No. 1785, known as a roustabout engine, which was used to draw a stub train from Geneva to Auburn and return. That engine was coupled to engine No. 173, a yard engine. Steam was up on both locomotives. The engines had started on their way, backing up, when they came into collision with another engine, also backing, and the plaintiff was injured.

This action was brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143). The trial court submitted to the jury the questions of negligence, assumed risk, and whether or not plaintiff was engaged in interstate commerce. The jury found a verdict in favor of the plaintiff.

The only question we deem of importance here is whether or not the evidence justified the finding of the jury that the plaintiff was engaged in interstate commerce within the meaning of the act in question.

It is undisputed that the defendant was engaged in both interstate and intrastate commerce. The plaintiff had been engaged in cleaning those two engines each night for three weeks. One of those engines, the one which hauled the stub train between Geneva and Auburn, was engaged in interstate commerce. It was admitted upon the trial that the stub train handled interstate freight daily. The other engine was engaged in interstate and intrastate commerce indiscriminately.

In the course of his work the plaintiff, ordinarily, would clean those two engines, they would then be run back to Geneva and two other engines would be run over the pit to be cleaned by him. During the time the engines were off the pit he would shovel the ashes and clinkers out of it.

There can be no doubt but what the plaintiff was in the service of the master when riding to his work at the time of the injury. That was the way he always traveled from Geneva to the pit at Thompsons. It was the way provided by the master, and while going from Geneva to his work on an engine furnished by the master the relation of master and servant existed and the plaintiff was engaged in performing a duty of his employment. (*Vick* v. *N. Y. C. & H. R. R. R. Co.*, 95 N. Y. 267; *Vroom* v. *N. Y. C. & H. R. R. R. Co.*, 129 App. Div. 858; affd., 197 N. Y. 588.)

If the work to which the plaintiff was regularly assigned, which he had performed for the three weeks before his injury and which he intended to perform on the night of his injury, was in interstate commerce, then at the time of the accident he was engaged in interstate commerce.

In the case of *Knowles* v. *N. Y., N. H. & H. R. R. Co.* (223 N. Y. 513) plaintiff's intestate was engaged in operating a switching engine engaged in moving cars in interstate commerce. He was walking through the defendant's yard on his way to his work when struck by an engine and killed. The court held that while the deceased was walking through the yard on his way to his work he was performing a duty required of him, a necessary incident of his work, and that when killed he was engaged in performing a duty connected with interstate commerce, within the meaning of the statute in question. That decision was based upon the case of *Erie Railroad Company* v. *Winfield* (244 U. S. 170; 61 Law. Ed. 1057). In that case an employee of the defendant, engaged in both interstate and intrastate commerce, was killed while leaving the yard after his day's work. The court said: " In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole."

This brings us to the question of whether or not the plaintiff was employed in interstate commerce while engaged in working at the dump pit cleaning engines. It is conceded that one of the engines which he was required to clean was regularly engaged in drawing cars which were used in interstate commerce. The jury could have found from the evidence that some of the engines which the plaintiff was required to clean were engaged in interstate commerce and that part of them were engaged indiscriminately in interstate and intrastate commerce. It does not appear in which kind of commerce the last engine he cleaned was engaged and it does not appear which engine he would have cleaned first if the accident had not happened.

In Erie Railroad Company v. Winfield (supra) the court, after stating that the deceased, an engineer on a switching engine, who was killed while walking through defendant's yard on his way home after his work, was still engaged in interstate commerce, said: " Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance." Under the reasoning of that case, it would seem that the plaintiff was protected by the act in question while going to his work if the work which he was engaged in was indiscriminately interstate and intrastate commerce.

This leaves for our consideration the sole question of whether or not the plaintiff, while engaged in doing the work which he was required to do upon an engine engaged in interstate commerce, was himself engaged in such commerce within the meaning of the statute and the decisions thereunder which are binding upon us.

The United States Supreme Court, in the case of Shanks v. D., L. & W. R. R. (239 U. S. 556; 60 Law. Ed. 436), stated the general rule for determining whether or not one is engaged

in interstate commerce within the meaning of the Federal Employers' Liability Act as follows: " Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion,   *   *   *   and that the true test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it." In that case the court held that an employee in a machine shop operated by the defendant to repair parts of locomotives, while engaged in taking down an overhead countershaft, was not protected by the act. The court said: " Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, *engine*, car or other instrument then in use in such transportation." The language above quoted would clearly indicate that one employed in keeping in usable condition an engine then in use in interstate transportation would come within the act.

In *New York Central R. R.* v. *Carr* (238 U. S. 260) the court said: " If he is injured while preparing an engine for an interstate trip he is entitled to the benefits of the Federal Act, although the accident occurred prior to the actual coupling of the engine to the interstate cars." The foregoing statement was *obiter dicta*, made by way of illustration only, but in making it the court referred to the case of *North Carolina Railroad Company* v. *Zachary* (232 U. S. 248) where a fireman had inspected, oiled, fired and prepared his engine for an interstate run and was killed while leaving the yard. In that case the court said: " It is argued that because, so far . as appears, deceased had not previously participated in any movement of interstate freight, and the through cars had not as yet been attached to his engine, his employment in interstate commerce was still *in futuro*. It seems to us, however, that his acts in inspecting, oiling, firing, and preparing his engine for the trip to Selma were acts performed as a

part of interstate commerce, and the circumstance that the interstate freight cars had not as yet been coupled up is legally insignificant."

It has also been held in *Walsh* v. *N. Y., N. H. & H. R. R. Co.* (223 U. S. 1) that a car repairer, injured while replacing a drawbar in a car then in use in interstate commerce, is entitled to the benefits of the act.

In *Guida* v. *Pennsylvania R. R. Co.* (183 App. Div. 822) the Third Department has held that an employee of an electric railway company, while cleaning boilers temporarily withdrawn from active service to be freed of soot and repaired, was, while working inside one of such temporarily idle boilers, engaged in interstate commerce. Mr. Justice LYON said: " The twelve boilers which were temporarily idle were an indispensable part of the boiler plant, as it was only by freeing them of soot and making the necessary repairs, which could be made only when the boilers had been temporarily withdrawn from active service, later substituting them for twelve boilers then in use, that the efficiency of the plant could be maintained, and the transportation system operated. Freeing the boilers of soot was as necessary to make them effective as making needed repairs. The deceased was, therefore, injured while engaged in restoring to efficiency one of the units of an indispensable instrumentality of interstate commerce. He was employed in interstate commerce equally with the employee who was carrying bolts with which to repair the bridge and the employee who was tamping the ties. At these times neither the bridge nor the track at the place of injury was in actual use by interstate trains. Like the boiler, they were at the places of injury, instrumentalities of interstate commerce, and not less such during temporary periods when they were out of actual use."

If the reasoning and decision in the *Guida* case are to be relied upon in the case at bar, then the engines, if they are such instrumentalities of interstate commerce as we believe them to be, were equally such instrumentalities when in use and when on the dump pit to be cleaned and coaled.

The learned counsel for the appellant has urged here, as he did at the Trial Term, that the plaintiff was not engaged in interstate commerce while cleaning engines at the dump pit,

even though such engines were regularly used in drawing cars engaged in such commerce. He has cited, as sustaining such position, many cases, but his chief reliance seems to be placed upon the case of *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 U. S. 353) which holds that a man injured while making repairs to an engine which had been used in hauling both interstate and intrastate cars was not, within the act, employed in interstate commerce. There is, however, a material difference between an engine laid up for repairs and an engine being merely cleaned and coaled and supplied with water between its daily runs. The one is withdrawn from service; the other is in service. The court in that case said: " At the moment it was not engaged in either," referring to interstate and intrastate commerce. However, the court in that case also said: " An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other."

The appellant contends that the engines in this case were not engaged in interstate commerce within that language, but it seems to us that we here have a different situation. In the first place, we are not dealing with engines undergoing repairs, but with engines in daily use, as above pointed out, and, further, at least one, No. 1785, the roustabout, was regularly assigned to a run whereon was handled interstate freight daily. It appears, also, that No. 173, the switch engine, daily handled interstate cars. The *Winters* case is distinguished in *Guida* v. *Pennsylvania R. R. Co.* (183 App. Div. 826).

The following cases turn upon the question of the nature of the servant's work being done at the time of the injury: *Illinois Central R. R.* v. *Behrens* (233 U. S. 473); *Chicago, B. & Q. R. R.* v. *Harrington* (241 id. 177); *Shanks* v. *D., L. & W. R. R.* (239 id. 556); *Minneapolis & St. Louis R. R. Co.* v. *Winters* (242 id. 353); *Erie R. R. Co.* v. *Welsh* (Id. 303); *Giovio* v. *N. Y. C. R. R. Co.* (176 App. Div. 230; affd., 223 N. Y. 653). These cases, so far as they are

cited as holding that the nature of the work being done at the instant of the injury is the controlling question, have no application to the facts in this case. The case of *Illinois Central R. R.* v. *Behrens* is a good example of the class of cases that hold that where a servant is engaged in both interstate and intrastate commerce indiscriminately he must, in order to be within the protection of the statute, have actually been engaged in interstate commerce at the very moment of injury.

Here the plaintiff was going to his work. While doing his regular work he would be engaged in both interstate and intrastate commerce. Going on his way to do that work on an engine provided by the defendant " was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another." This distinction is made very clear in the case of *Erie Railroad Company* v. *Winfield (supra).*

It would be quite unprofitable to review the many cases cited by the appellant. It seems to us, however, that none of them is authority for the proposition that one who is engaged in cleaning and getting ready for the next day's run an engine which is regularly engaged in interstate commerce is not himself engaged in interstate commerce within the meaning of the statute. Had a member of the crew been injured under the circumstances of this case, the case would fall precisely within the holding in the *Winfield* case. Plaintiff's work was quite as necessary and important a part of interstate commerce as that of the fireman who shovels the coal into the engine.

It has been held that an employee engaged in cleaning out an ash pit, under the tracks, into which locomotives employed in both interstate and intrastate commerce dump ashes, was engaged in interstate commerce, as the keeping of the ashpit clean was required by both kinds of commerce. (*Grybowski* v. *Erie R. Co.*, 88 N. J. L. 1; affd., 89 id. 361; cited in *Guida* v. *Pennsylvania R. R. Co.*, 183 App. Div. 824; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Clarke*, 169 Ky. 662.) If those holdings are correct, then the plaintiff was engaged in interstate commerce when injured while on his way to do that work, within the holding in the *Winfield* case.

We are satisfied that the plaintiff, at the time he was injured, while on his way to his work on an engine provided by the defendant, was in the service of the defendant; that he was engaged when doing his regular work in both interstate and intrastate commerce; that his trip on the engine from Geneva to Thompsons to his work was a necessary incident of his service and of the nature of his work as a whole; and that he was, therefore, at the time, engaged in interstate commerce within the meaning of the act and the controlling decisions thereunder.

The judgment and order are affirmed, with costs.

All concurred, except FOOTE, J., who dissented upon the authority of *Dahler* v. *Pennsylvania R. R. Co.* (178 App. Div. 956), in which motion for leave to appeal was denied by this court (179 App. Div. 961), and in which the Court of Appeals on October 10, 1917, denied motion for leave to appeal to that court, although the case of *Erie R. R. Co.* v. *Winfield* (244 U. S. 170) was called to its attention.

Judgment and order affirmed, with costs.