ERIE R. CO. v. COLLINS.*

(Circuit Court of Appeals, Second Circuit. January 30, 1919.)

No. 40.

1. COMMERCE ⬤⟿27(5)—EMPLOYERS' LIABILITY ACT—EMPLOYÉ ENGAGED IN "INTERSTATE COMMERCE."

A railroad employé in charge of a signal tower and water tanks, who was injured while operating a pump for pumping water from a well into the tanks for supplying water to the locomotives of both interstate and intrastate trains, *held* engaged in work so closely related to interstate commerce as to be within Employers' Liability Act, § 1 (Comp. St. § 8657).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. MASTER AND SERVANT ⬤⟿217(1)—ASSUMED RISKS—KNOWLEDGE OF DANGER.

A servant does not assume risks due to the negligence of his employer and fellow employés, unless they are obvious or fully known and appreciated by him.

3. MASTER AND SERVANT ⬤⟿153(2)—MASTER'S LIABILITY FOR INJURY TO SERVANT—WARNING INEXPERIENCED SERVANT.

A railroad company, which placed a young man in charge of the operation of a gasoline pumping engine, of which he had no knowledge or experience, without instruction or warning as to the danger, *held* chargeable with negligence, which rendered it liable for his injury by an explosion of vapor from the engine.

4. DAMAGES ⬤⟿216(10)—PERSONAL INJURY—MENTAL SUFFERING.

Shame and humiliation, which an injured employé may suffer as a result of a facial disfigurement, may properly be considered, under a charge permitting damages for mental suffering.

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of New York.

Action at law by William M. Collins against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 245 Fed. 811.

The action is brought under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. §§ 8657–8665]) to recover damages for personal injuries which defendant in error, hereinafter called plaintiff, is alleged to have suffered because of the negligence of the plaintiff in error, hereinafter called defendant. The plaintiff recovered a verdict for $15,000, and judgment has been entered in his favor for $15,045.66.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (John W. Ryan, of Buffalo, N. Y., of counsel), for plaintiff in error.

Hamilton Ward, of Buffalo, N. Y. (Irving W. Cole, of Buffalo, N. Y., of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. [1] The plaintiff, when 17 years old, entered defendant's service in January, 1912, and for a time served

as a ticket seller and night telegraph operator at a small village in the state of New York. On December 21, 1915, he was put in charge of a signaling tower and water tank. The tower was used for the operation of the interstate and intrastate trains of the defendant. The tank was used for the purpose of supplying water to the engines of such trains. It was the plaintiff's duty to report the trains as they went back and forth by the tower to the dispatcher in Buffalo. In case a train wanted to go on the siding, the dispatcher notified plaintiff to put the train on the siding, and it was necessary for him to walk down the track 4 or 5 rods and throw the switch, and walk up the track about the same distance and throw another switch. The tower was equipped with telegraph and telephone instruments. About 25 freight trains a day took water at the water tank, and 7 or 8 engines exhausted the water which the tank held at any one time. The water in the tank came from a closeby well, being forced from it into the tank by a pump operated by a gasoline engine which the plaintiff ran.

The defendant claims that this action cannot be maintained, because the plaintiff at the time of his injury was not employed in interstate commerce within the meaning of the federal Employers' Liability Act. This question must be first determined, for, if not within the act, the court below was without jurisdiction, and judgment must be reversed. The question was raised by a motion for a nonsuit at the close of plaintiff's case, which motion, having been denied, was renewed at the close of all the evidence, and again by defendant's request to charge; exceptions being duly taken.

The character of the plaintiff's employment at the time of his injury, whether interstate or intrastate, depends upon the character of the work in which he was at that time engaged. At the time of the injury the plaintiff was employed in pumping water from the earth into a tank 1,000 feet distant, from which it would flow into locomotives, some of which, as before indicated, were engaged in interstate commerce. After the water reached the tank, the work of taking it into the engines was done by the engine crews.

In Pedersen v. Delaware, Lackawanna & Western R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, the plaintiff was an iron worker employed by the defendant. At the time of his injury he was carrying a sack of bolts or rivets from a tool car to a bridge, to be used the next morning in work on the bridge. The court held that the plaintiff in that case was at the time of his injury engaged in work so closely related to interstate commerce as to be in practice and in legal contemplation a part of it. The point was made that the man was not at the time of his injury actually engaged in removing the old girder from the bridge and inserting the new one, but was merely carrying to the place where that work was to be done some of the materials to be used therein. This view of the matter the court declined to take saying:

"It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work."

And so, in the case at bar, it was necessary to the operation of defendant's trains that the engines which haul its cars should be furnish-

ed with water, and the plaintiff, in the act of pumping the water into the tank which was to supply the engines, was, as in the Pedersen Case, carrying to the place where the engines were to be filled "the materials to be used therein." And if the bolts not yet driven into the bridge, and not in the act of being driven in, are an instrumentality of interstate commerce, so is the water not yet put into the boilers of the locomotives, and not in the act of being placed therein, but which is in the act of being taken to where it is at once to be so used, and not on the next day, as in the Pedersen Case.

The defendant, however, relies on the case of Delaware, Lackawanna & Western Railroad Co. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397. In that case the plaintiff at the time of his injury was engaged in preparing and setting off a charge of dynamite for the purpose of blasting coal and the explosive gases which had accumulated at the place where he was working suddenly ignited and exploded, and caused a squib attached to a charge of dynamite to catch fire and explode the dynamite, which caused the injuries for which the suit was brought. The plaintiff was employed in mining coal in the railroad company's colliery in the state of Pennsylvania, which coal was mined for use by it in the locomotives and engines used in its business as a common carrier in interstate commerce. The Supreme Court held that it conclusively appeared that the injury did not occur in interstate commerce. "The mere fact," said the court, "that the coal might be or was intended to be used in the conduct of interstate commerce after the same was mined and transported did not make the injury one received by the plaintiff while he was engaged in interstate commerce." And in the case at bar it was urged at the argument that upon principle we must conclude that the plaintiff, who at the time of his injury was engaged as we have said in pumping water from the earth, has no closer relationship to interstate commerce than had the plaintiff in the above case, who was mining coal which might be used in interstate commerce. "If a railroad company," counsel argued, "employed an engineer to pump water from the earth at a distance from its right of way, and transported the water by cars or a pipe line to a water tank upon its right of way, for use there upon engines engaged in interstate commerce, we would have a situation exactly like the one presented to the court in the Yurkonis Case."

That is not a fair statement of the case. In the latter case the plaintiff had no interstate employment, but was employed simply in mining coal at the mines, the use of which in interstate commerce was neither certain nor immediate. In the case at bar the plaintiff had an interstate employment in caring for and operating a plant, consisting of a tower house and instrumentalities therein, and the pump and the engine and the tank, all of which were permanent instrumentalities of interstate commerce; and the water, unlike the coal being mined, was for immediate use in interstate commerce. In order that interstate commerce might be carried on, it was necessary that there should be a water tank, and that it should be kept supplied with water for the interstate engines, and that there should be a pump house and a pump and a gasoline engine for the purpose of keeping the tank supplied

with water, without which the interstate engines could not continue their interstate functions. All these things were necessary incidents of the interstate commerce in which the defendant was engaged. The water tank, the pump house, the pump, and the gasoline engine, used for the purpose of keeping the water tank supplied with water, were, under the circumstances, just as essential to the practical operation of the defendant's interstate commerce business as the tracks over which its trains were propelled. In filling the water tank for the immediate use of locomotives engaged in interstate commerce, the plaintiff was engaged in work so closely related to interstate commerce as to be practically a part of it, and that is sufficient to bring the case within the terms of the federal Employers' Liability Act. Shanks v. Delaware, Lackawanna & Western R. Co., 239 U. S. 556, 559, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

It is said that this case is ruled by the case of Chicago, Burlington & Quincy Railroad Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941. In that case a wife brought the action to recover damages for the death of her husband, who was a member of a switching crew employed by the railroad company in its terminal yards at Kansas City, which is an important center for the handling of interstate and intrastate commerce, and where locomotives and cars used in both kinds of traffic are received, sent out, cared for, and repaired in the yards. At the time of his death Harrington was engaged in switching coal belonging to the railroad company, and which had been standing on a storage track for some time, to the coal shed, where it was to be placed in bins or chutes, from which it was to be supplied as needed to locomotives of all classes, whether used in interstate or intrastate traffic. The court held that Harrington, while engaged in the moving of the coal from the storage tracks, was not engaged in interstate commerce, and in so holding declared that the case was not distinguishable in principle from the Yurkonis Case, supra.

We see no distinction between the facts in the Harrington Case and the facts in the Yurkonis. In the Yurkonis Case the coal in the act of being mined had not yet become an instrumentality of interstate commerce; and after coal has been mined, and while it is being carried from one state to another, it is in interstate commerce. It ceases to be in such commerce when it reaches its destination and is left on the storage tracks for some time, as in the Harrington Case. Then the coal, being out of interstate commerce, does not again get into interstate commerce by the mere act of being moved from the storage tracks to another place on the tracks in front of the coal chutes. That was the act Harrington performed. The coal was still to be unloaded into the chutes, and with that act Harrington was not engaged. In unloading the coal into the chute, from which it was to be taken by the locomotives in interstate and intrastate commerce, it became converted into an instrumentality of interstate commerce. The act of putting the coal into the chutes from which the engines can take it is an act performed in interstate commerce, as much so as is the act of putting water into the trough by the side of the tracks to be scooped by passing engines; and we cannot distinguish the act of putting the coal into

the coal chutes for the supply of the engines from the act of putting rails alongside of a track into which they are to be fitted or the bolts by the side of the bridge, as in the Pedersen Case. If we had the right to question, as of course we have not, the correctness of those decisions, we have no disposition to do so. But we think the cases are distinguishable from the case at bar.

In Roush v. Baltimore & Ohio R. Co. (D. C.) 243 Fed. 712, District Judge Westenhaver held, in a well-considered opinion, that an employé of an interstate railroad company, engaged in operating a pumping station, furnishing water indiscriminately and contemporaneously to locomotives engaged in interstate and intrastate commerce, is, within the federal Employers' Liability Act, being engaged at the time of the accident in interstate transportation or in work so closely related thereto as to be practically a part thereof.

In Horton v. Oregon W. R. & N. Co., 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8, an engineer at a station, engaged in pumping water to be used by either intrastate or interstate commerce, as the business exigencies of the defendant required, was declared to be engaged in interstate commerce. The court, answering the objection that he was not engaged in interstate commerce said:

> "Was the relation of his employment such that an injury to him tended to delay or hinder the movement of trains engaged in such commerce? There is but one answer to the question. Water to supply the engines pulling such trains had to be pumped as a necessary incident to the movement of trains. If, when he was killed, his place had not been supplied by another, the movement of trains engaged in interstate commerce conducted by the master, as well as the local trains, must have ceased altogether. * * * There can be no possible distinction in the relation to interstate commerce between the employment of the fireman who stokes the engine hauling the train so engaged and that of the man who pumps the water for the same engine. The engine would not run without the service of either. If there is a distinction, it is too fine-spun and diaphanous for ordinary perception. To hold that here is any material distinction would be as unjust as artificial. * * * "

In the Matter of Guida, 183 App. Div. 822, 171 N. Y. Supp. 285, a railroad company maintained boilers at a place in which it produced steam necessary to operate electricity producing machinery from which it supplied power to both intrastate and interstate trains. A laborer, injured while removing soot from one of the boilers, was held to be engaged in interstate commerce. The case has been affirmed by the Court of Appeals without opinion in 224 N. Y. 174, 121 N. E. 871.

[2] It is said that the plaintiff as a matter of law assumed the risk of the injury which he received. The rule of the common law is that an employé assumes the risk of the ordinary dangers of the occupation into which he enters, and also those which are known or so plainly observable that he may be presumed to know them. The federal Employers' Liability Act in section 4 (Comp. St. § 8660) abolishes the doctrine of assumption of risk in cases falling under that section, and the case at bar is not within the provision of that section. So that the doctrine is still applicable to the facts of this case. Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

But a servant does not assume risks due to the negligence of his employer and fellow employés unless they are obvious or fully known and appreciated by him. Boldt v. Pennsylvania Railroad Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385. And the question of assumption of risk is one of fact for the jury. Chesapeake & Ohio Railway Co. v. De Atley, 241 U. S. 310, 318, 36 Sup. Ct. 564, 60 L. Ed. 1016. It was properly submitted to the jury in this case, and their action respecting it is not to be disturbed.

[3] The defendant insists that there is no testimony in the case which tends to show negligence on its part. In our opinion the testimony is such as clearly justified the submission of the case to the jury. The defendant put this young man of 21 years of age in charge of a gasoline engine, without information as to the dangers incident to its operation. The plaintiff told the man who had previously been in charge that he did not even know how to set the engine going, and he asked him to explain that part of the business to him. The accident happened the first night he undertook to operate the engine after the former employé had shown him how, and he says he set the engine going in the same way he had seen it done four days before. He was never told that gasoline fumes seek lower levels, and, while he knew that gasoline was explosive, he did not know that the vapor from it was explosive. He had no knowledge or appreciation of the danger of pouring gasoline near a lantern or any fire. The jury had a right to conclude that it was negligence for the defendant to permit the plaintiff to do the work he had to do with this gasoline engine without any previous knowledge, instructions, or warnings as to these things, and without so much as inquiring whether he knew anything about them, or even whether he knew how to start the engine running. Neither the age, education nor experience of this plaintiff were such that the defendant had any right to presume knowledge on his part of the properties of gasoline and of the dangers incident thereto.

As the result of the explosion the plaintiff was terribly scarred and disfigured on his face, neck, and ears. The burns which he received are described as being of the third degree, resulting in red scar tissue which will continue during his life. This scar tissue, which is most disfiguring, extends from the right side of the face, under the chin, and up on the left side of the face and the top of the left ear. The outer lobes of one of the ears were entirely burned off. This disfigurement naturally influenced the jury in arriving at their verdict. But with the amount awarded we have nothing to do.

[4] The court, in charging on the subject of damages, was asked to charge "that any disfigurement which causes the plaintiff shame and humiliation is a measure of damages." The court, having already charged that the jury might take into consideration all the pain of body and mind the plaintiff had suffered as a direct result of the injuries he received, seemed to be in doubt, and asked counsel whether he pressed it, and counsel replied: "Yes, sir; I do." Thereupon the court said: "Then I so charge." The instruction as asked was entirely unnecessary, and the words in which it was framed were not well chosen, and we think the court might well have declined to give it on the ground

that the subject had been sufficiently covered, inasmuch as he had already instructed that the jury could consider "all the pain of body and mind he has suffered as a direct result of the injuries he received * * * from the time of the accident to the present time, * * * all the pain and suffering, if any he will enure in the future which directly grows out of his complained-of injuries." Shame and humiliation are a part of his pain of mind. Shame and humiliation, under the circumstances shown, meant nothing more than mental anguish as resulting from and part of physical suffering. In McDermott v. Severe, 202 U. S. 600, 611, 26 Sup. Ct. 709, 713 (50 L. Ed. 1162), the court sustained an instruction, in the case of a boy who had lost a leg, that the jury could consider mental suffering, past and future, found to be the necessary consequence of the loss of his leg. "It is objected," said the court, "that this instruction permits a recovery for future humiliation and embarrassment of mind and feelings because of the loss of the leg. But we find no objection to the charge as given in this respect." And see Kennon v. Gilmer, 131 U. S. 22, 26, 9 Sup. Ct. 696, 33 L. Ed. 110.

Judgment affirmed.

HOUGH, Circuit Judge, dissents.