### KOZIMKO v. HINES, Director General of Railroads.

(Circuit Court of Appeals, Third Circuit. November 12, 1920.)

No. 2587.

Commerce ☞27(5)—Crane for unloading coal cars not engaged in "interstate commerce," under Employers' Liability Act.

A crane used for unloading coal cars, so as to create a coal reserve to be used in both interstate and intrastate commerce in case of a threatened strike, was not engaged in "interstate commerce," and a person killed while on his way to work upon such crane could not recover under the federal Employers' Liability Act (Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action by Joseph Kozimko, administrator of Joseph Pekalska, deceased, against Walker D. Hines, Director General of Railroads. Judgment for defendant, and plaintiff brings error. Affirmed.

Frank M. Hardenbrook and Charles M. Egan, both of Jersey City, N. J., for plaintiff in error.

William A. Barkalow, of New York City (Charles E. Miller and George Holmes, both of New York City, of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Of the several issues here involved the one on which recovery primarily depends is whether the plaintiff's decedent was at the time of his injury employed in interstate commerce within the meaning of the Federal Employers' Liability Act. Act of April 22, 1908, 35 Stat. 65, c. 149, amended by Act of April 5, 1910 (Comp. St. §§ 8657–8665), printed in full in Second Employers' Liability Cases, 223 U. S. 6, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.

The stipulated facts are these:

For two weeks prior to the accident the decedent had been employed at night in keeping up fires used in operating a crane located at Port Johnson, Bayonne, New Jersey. For the same period, the crane had been used in the daytime exclusively to unload coal from cars to the ground "for use by the Director General in operating the Central Railroad of New Jersey."

The coal, having been transported from outside the State of New Jersey, had, prior to being unloaded, "reached its destination * * * in the storage yard" of the railroad company. "This coal was to be used to accumulate a reserve supply of coal in view of the then threatened coal strike, and was to be used, in the event of the normal supply being cut off, for any purpose that coal was needed in the operation of said railroad."

It being possible that some of the coal thus stored might be used for coaling engines engaged in interstate commerce, the parties stipulated further that "the nearest coaling station to said storage pile was about one and one-half miles distant from the place where the said crane was being operated and said coal unloaded," and that "the said coaling station was used to coal freight engines used indiscriminately in interstate and intrastate commerce."

The place where the accident happened was about seven miles from the place where the decedent worked. In going to the station to take a train for the place of his employment, the decedent, instead of going on the public streets for a distance of several blocks, walked toward the station along the railroad tracks. While doing so, he was struck by an engine moved in a negligent manner, it is alleged, and was killed.

On this showing the District Court found that the decedent was not at the time employed in interstate commerce, and accordingly entered judgment of non-suit. The plaintiff sued out this writ of error.

We lay aside the question whether the act of the decedent in going upon the tracks on the way to his night's work was a necessary incident of his work and therefore partook of its character, Nor. Car. R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Erie R. R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; and inquire directly whether the crane was used in interstate commerce, for upon the use of the crane with respect to commerce depends in any event the character of the decedent's employment at the time of his death.

On the stipulated fact that the coal had reached its destination prior to being unloaded, the learned trial judge held that it had lost its character of interstate commerce, and that in consequence the crane, when sometime afterward it handled the coal, was not an instrumentality of commerce of that kind, resting his decision on C., B. & Q. R. R. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941, and Lehigh Valley R. R. Co. v. Barlow, 244 U. S. 183, 37 Sup. Ct. 515, 61 L. Ed. 1070. In these cases—both injured employés being members of switching crews—the Supreme Court held that the several acts of switching coal cars from storage tracks to coal sheds where later the coal was to be unloaded and placed in bins or chutes for supplying locomotives engaged in interstate and intrastate traffic were not interstate movements; and that employés engaged in such movements, like employés engaged by a carrier in mining coal in the carrier's colliery destined for use in interstate commerce, D., L. & W. R. R. Co. v. Yurkonis, 238 U. S. 439, 35 Sup. Ct. 902, 59 L. Ed. 1397, were employed in work so remotely related to interstate commerce as not to be a part of it within the meaning of the Act.

The error which the plaintiff charges against the trial judge is in applying the rule of the Harrington and Barlow Cases to the facts in this case, which, he maintains, are essentially different.

Conceding that the coal in this case had lost its status of interstate commerce on arriving at its destination (as in the two cases last referred to), the plaintiff contends, nevertheless, that by the next step, namely, unloading the coal and holding it in reserve, thereby bringing it nearer its future use, the coal acquired anew the character of interstate commerce and the crane by which it was unloaded became at the same time an instrumentality of commerce of the same character, relying on Erie R. R. Co. v. Collins, 259 Fed. 172, 170 C. C. A. 240 (C. C. A. 2d), affirmed by the Supreme Court at 253 U. S. 77, 40 Sup. Ct. 450, 64 L. Ed. 790.

The Collins Case concerned an injury to an employé while working upon an engine used to pump water to a watertank which supplied locomotives engaged in commerce of both kinds. Because of the direct relation of the pump to interstate commerce—a closer relation than that of shifting coal cars to coal sheds, as in the Barlow and Harrington Cases—the court held the pump to be an instrumentality of interstate commerce.

While in the case at bar the unloading of the coal on the ground was one step nearer its use in commerce than was taken in the Harrington and Barlow Cases where the coal was not unloaded, yet the case at bar, involving more movements from car to commerce, falls short the very step taken in the Collins Case which brought the instrumentality of use near enough to the commerce in which it was employed to partake of its character.

The decision in the Collins Case is justified on the ground that the water pumped into the tank would ultimately and inevitably enter into commerce of both kinds and that the pump which forced the water in aid of such commerce was therefore so closely related to interstate commerce as to be a part of it. The pump had, like a roadbed, become permanently devoted to commerce among the states. Minneapolis & St. Louis R. R. Co. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. But the coal in the case at bar, though unloaded from cars, had not been consigned to commerce. It had not been placed in bins or chutes from which it would serve commerce of either kind. It had been placed on the ground and stored, "to be used for *any* purpose," chiefly to meet the exigencies of a threatened strike. Its use in commerce was neither immediate nor certain. Its use in interstate commerce depended upon a double contingency—first, a strike; and second, the need therein of reserve coal; one, or the other, or both of which events might never happen. As the character of instrumentalities of commerce depends upon their "employment at the time, not upon remote probabilities or upon accidental later events," M. & St. L. R. R. Co. v. Winters, supra, we cannot regard the storing of coal against the two contingencies we have named as being so certainly and so closely related to the interstate commerce that might follow

"as to be practically a part of it." Therefore we find no error in the rulings of the trial court that the crane used in unloading and storing coal was not at the time of the decedent's injury an instrumentality of interstate commerce, and that the decedent when killed was not employed in commerce of that character. Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Shanks v. D., L. & W. R. R. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Erie R. R. Co. v. Van Buskirk, 228 Fed. (C. C. A. 3d) 489, 143 C. C. A. 71.

The judgment below is affirmed.