ERIE RAILROAD COMPANY v. WINFIELD.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

No. 353.   Argued March 1, 1916; restored to docket for reargument November 13, 1916; reargued February 1, 2, 1917.—Decided May 21, 1917.

The duty of interstate railroad carriers to make compensation for injury or death of their employees in interstate commerce is regulated uniformly and exclusively by the Federal Employers' Liability Act and is thereby confined to cases of causal negligence. *New York Central R. R. Co. v. Winfield, ante*, 147.

It is beyond the power of any State to interfere with the operation of the federal act, either by putting carriers and their employees to an election between its provisions and those of a state statute or by imputing such an election to them through a statutory presumption. So *held* in the case of a New Jersey law containing provisions for compensation without regard to negligence, to be applicable when employer and employee elect to accept them, and presuming acceptance in the absence of a declaration to the contrary.

In leaving the yard after his day's work in switching inter- and intrastate commerce, the employee is "engaged in interstate commerce."

88 N. J. L. 619, reversed.

THE case is stated in the opinion.

————————————————————

*Mr. George S. Hobart* and *Mr. Gilbert Collins* for plaintiff in error.

*Mr. Harry Lane* for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a proceeding under a New Jersey statute, c. 95, Laws 1911, against a common carrier by railroad, engaged in both interstate and intrastate commerce, to obtain compensation for the death of one of its employees. The employee was in charge of a switch engine in the carrier's extensive yard at Croxton, New Jersey, and was switching freight cars about in the yard, especially to and from a transfer station. The cars usually contained package freight and many were moved in the course of a day's work. In some the freight was interstate, in others intrastate and in still others it was of both classes. This was true of the cars moved on the day in question. In concluding his work for that day the employee took his engine to the place where it was to remain for the night and started to leave the yard. His route lay across some of the tracks and while passing over one he was struck by an engine and received injuries from which he soon died. No causal negligence was alleged or proved and both parties assumed there was none. In these circumstances the trial judge, while not doubting that the fatal injury occurred in the course of the deceased's employment, held that he was not then employed in interstate commerce and that compensation should be made under the state statute to the widow. A judgment in her favor was entered, but was reversed by the Supreme Court of the State, which concluded that the deceased's employment at the time of the injury was in interstate commerce and that the case was controlled by the Employers' Liability Act

of Congress, which makes negligence the test of the carrier's liability or obligation. That judgment was in turn reversed by the Court of Errors and Appeals, which, although assuming "that the conclusion of the Supreme Court as to the character" of the deceased's employment at the time of the injury "was justified by the facts proved," regarded the federal act as without bearing, because affording no remedy and imposing no liability in the absence of causal negligence. 88 N. J. L. 619.

The questions presented for decision are these: First, whether the federal act is regulative of the carrier's liability or obligation in every instance of the injury or death of one of its employees in interstate commerce, or only in those instances where there is causal negligence for which the carrier is responsible. Second, whether the facts proved sustain the conclusion that the deceased was employed in interstate commerce at the time of the injury. Third, whether by reason of the state statute the carrier became bound contractually to make compensation in this instance, even though it came within the federal act.

The first question is fully considered in *New York Central R. R. Co.* v. *Winfield*, the opinion in which has been just announced, *ante*, 147, and it suffices here to say that, for the reasons there given, we are of opinion that the federal act proceeds upon the principle which regards negligence as the basis of the duty to make compensation and excludes the existence of such a duty in the absence of negligence, and that Congress intended the act to be as comprehensive of those instances in which it excludes liability as of those in which liability is imposed. It establishes a rule or regulation which is intended to operate uniformly in all the States, as respects interstate commerce, and in that field it is both paramount and exclusive.

The second question must be given an affirmative an-

swer. In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. See *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, 260. Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance.

The third question requires some notice of the New Jersey statute. It consists of two parts. One conforms to the principle which regards negligence as the basis of liability and excludes liability in the absence of negligence. In its details, however, that part differs materially from the federal act. The other conforms to a different principle which rejects negligence as a basis of liability and requires compensation to be made by the employer wherever the injury or death of the employee is an incident of the service in which he is employed. This part is described as "elective" and is not to be applied unless the employer and the employee shall have agreed, expressly or impliedly, to be bound thereby and to surrender "their rights to any other method, form or amount of compensation or determination thereof." Respecting the mode of manifesting such an agreement or the contrary, it is provided that every contract of hiring "shall be presumed to have been made" with reference to this part of the statute and, unless the contract or a notice from one party to the other contain "an express statement in writing" to the contrary, it "shall be presumed" that the parties "have agreed to be bound" by this part of the statute. There was no express agreement in this instance and there is no

basis for regarding the carrier as in any way bound by this part of the statute, save as it provides that an agreement to be bound by it shall be presumed in the absence of a declaration to the contrary. But such a presumption cannot be indulged here, and this for the reason that by the federal act the entire subject, as respects carriers by railroad and their employees in interstate commerce, was taken without the reach of state laws. It is beyond the power of any State to interfere with the operation of that act, either by putting the carriers and their employees to an election between its provisions and those of a state statute or by imputing such an election to them by means of a statutory presumption. The third question therefore must be answered in the negative.

It follows that the Court of Errors and Appeals erred in failing to give controlling effect to the federal act.

*Judgment reversed.*

MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE dissent.