## DIRECTOR GENERAL OF RAILROADS v. BENNETT. *

(Circuit Court of Appeals, Third Circuit. November 12, 1920.)

No. 2584.

1. Commerce ⊕27(7)—Engineer, injured when leaving work, engaged in "interstate commerce," within Employers' Liability Act.

Where a locomotive engineer, after completing yard shifting movements in furtherance of interstate commerce, was injured while taking his engine to the roundhouse, either to put it up for the night or to receive further orders, held, that he was engaged in interstate commerce, within the Employers' Liability Act (Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 254 U. S. —, 41 Sup. Ct. 218, 65 L. Ed. —.

2. **Commerce ⊚⟶27(7)—Movement of engine toward roundhouse after completing work held within Employers' Liability Act; "interstate commerce."**

Where an engine, engaged in yard shifting movements of interstate commerce, was being taken to the roundhouse, either to be put up for the night or to receive other orders, *held*, that it was engaged in "interstate commerce" during such movement, so as to enable its engineer to recover under Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries received during the movement.

3. **Master and servant ⊚⟶286(15)—Negligence in placing of defective car on track with small clearance jury question.**

In an action under the Employers' Liability Act (Comp. St. §§ 8657–8665) for the death of an engineer, scalded when the safety valve of the locomotive was knocked off by a defective car on the adjoining track, *held* that defendant railroad's negligence in placing the defective car at a point of narrow clearance was a jury question.

4. **Master and servant ⊚⟶288(2)—Engineer's assumption of risk jury question.**

Where a bulging defective car was left at a point of narrow clearance, so that it knocked off the safety valve on a locomotive passing on an adjoining track, resulting in the engineer's death, *held*, in an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), that deceased's assumption of risk was a jury question.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Mabel Bennett, administratrix of Frank Bennett, deceased, against the Director General of Railroads. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff in error.

Frank F. Davis and John C. Oldmixon, both of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Bennett, engineer of a yard engine, employed in shifting service of a railroad engaged in both interstate and intrastate commerce, hauled a train of interstate cars to its destination in the railroad yard. This terminated all service in connection with the train. The eight hour day of the shifting crew having ended, or being about to end, the next movement of Bennett and his engine was toward the roundhouse, there to receive orders, if any, to be carried out on overtime; or, lacking orders, to discharge the crew and house the engine. In making this movement, the edge of a car on an adjoining track struck and tore away the safety valve of the engine. Bennett died from injuries sustained from escaping steam. In this suit, brought by his administratrix under the Federal Employers' Liability Act (Comp. St. §§ 8657–8665), judgment was entered on verdict in her favor. The defendant sued out this writ of error.

By the first question brought here for review, the validity of the judgment is challenged on the ground that the plaintiff failed to prove the engagement of both employé and carrier in interstate commerce at the time of the injury as required by the Act. Second Employers' Liability Cases, 223 U. S. 1, 55, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; St. Louis & San Francisco Ry. Co. v. Seale, 229 U. S.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

156, 158, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 478, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Murray v. P., C., C. & St. L. R. R. Co., 263 Pa. 398, 107 Atl. 21. Assuming that the double aspect of the Federal question is raised by the assignments of error, its answer depends on the character of commerce in which the employé was employed and in which the engine as an instrumentality of commerce was engaged at the time of the injury. Neither one nor the other was at the time actually engaged in moving commerce of any kind, for the engine was moving light; but the movement in which both were involved may have been a necessary incident to commerce of one kind or the other, and if so, the movement partakes of the character of the commerce to which it relates.

[1] Considering the question as it bears on the employment of the engineer, it was shown that he was either on his way home after a movement of interstate traffic or on his way to a place at which he might receive orders for further movements, either interstate or intrastate. The interstate movement just completed was not shown to have been merely a yard shifting movement as in Murray v. P., C., C. & St. L. R. R. Co., supra, but was, so far as the evidence discloses, a movement in actual furtherance of interstate commerce. Putting out of view the remote possibility of future employment as not determinative of the character of his work at the time of his injury (Minneapolis & St. Louis R. R. Co. v. Winters, 242 U. S. 353, 357, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54), the day's work of the engineer, so far as the evidence shows, had ended and his movement was homeward. An employé's "trip through the yard to his engine in the morning," has been held to be a necessary incident to his day's work and necessarily to partake of the character of that work. Erie R. R. Co. v. Winfield, 244 U. S. 170, 173, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; Nor. Car. R. R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. If the first train movement the decedent engineer was ordered to make in his day's work had been of an interstate train, the trip of the engine from roundhouse to train would for like reason have been an incident to interstate commerce, and if injured in making the trip, he would have been entitled to the protection of the Federal Employers' Liability Act. Similarly, on leaving his day's work, his last train movement having been of an interstate train, his movement homeward bound would be regarded as a necessary incident to the commerce he had just completed. Erie R. R. Co. v. Winfield, supra. On both reason and authority we are of opinion that when Bennett was injured while leaving his job at the end of the day, notwithstanding the movement might have been, but actually was not, interrupted by an order to proceed elsewhere on overtime, he was but discharging a duty of his employment in a manner necessarily incident to the interstate movement he had just completed.

[2] The defendant maintains in the other aspect of the question, that it, the carrier, was not engaged in interstate commerce at the time of the injury because its engine, moving light, was not an instrumentality specifically assigned to interstate commerce, nor was it performing

a service exclusively or directly connected with commerce of that kind. The character of the instrumentality with reference to commerce, like that of the employé, depends on whether it was a necessary incident to the commerce just concluded. If the engine, instead of going to the roundhouse to end its day's work, had started from the roundhouse to begin its day's work, and was directly on its way under orders to a movement in interstate commerce, the trip from roundhouse to traffic would without doubt have been a movement necessarily incident to interstate commerce and so closely related to it as to have been practically a part of it. Erie R. R. Co. v. Winfield, supra; Nor. Car. R. R. Co. v. Zachary, supra; Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 157, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. If, to use another illustration, the engine had left an interstate movement just completed and was on its way to another interstate movement ordered, it would be regarded with equal certainty to have been engaged in the carrier's business of interstate commerce. If, on the other hand, the engine were passing from an interstate movement completed to an intrastate movement ordered, there might be a question as to which commerce the movement from one to the other was incidental, and, accordingly, a question as to the character of which commerce this spanning movement partook. But in the case at bar the engine's departure was from interstate commerce and its movement was toward no commerce of any kind. Its movement, if incidental to commerce at all, must therefore have been incidental to interstate commerce. That is the only commerce with which it had any relation at the time of the injury. As the reverse movement of the engine—from roundhouse to interstate traffic—is a necessary incident to interstate commerce, we fail to see why a movement from interstate commerce to roundhouse is not, pari ratione, a necessary incident to such commerce. The movement home after service in interstate commerce is regarded as a necessary incident to that commerce with respect to an employé (Erie R. R. Co. v. Winfield, supra). It would seem that the same movement home after the same service by the instrumentality on which the employé had been employed was similarly a necessary incident to the commerce in which the carrier had just been engaged.

If the engine had been employed as an instrumentality exclusively in interstate commerce, no one would doubt that the engine movement from roundhouse to traffic or from traffic to roundhouse would be an incident to the one kind of commerce in which it was at all times engaged. This is so because of the certainty of the commerce in which the instrumentality was engaged and because of the direct relation which each bore to the other. When the relation of commerce and its instrumentality is equally direct and the character of the commerce last moved is equally certain—as in this case, where, after the interstate movement, no movement of another kind was begun or presently contemplated—the movement of the instrumentality is as directly and certainly an incident to the commerce last moved as where the instrumentality is engaged exclusively in commerce of a defined kind.

We are of opinion that the trial court committed no error in its charge or in its refusal to direct a verdict because of failure of proof of the two essentials of the Federal Employers' Liability Act.

The defendant charges further error to the court in permitting the jury to find that Bennett's death was due to negligence on the part of his railroad employer and to find that Bennett did not assume the risk of the accident which happened. On these issues the facts are briefly these:

The movement of the engine was on a track next to and parallel with a track on which there was a line of cars. One of these cars had been inspected three days before, and, though showing a bulge in the door, it had been passed as fit for service. In addition the car had a list.

The car in this condition, the jury has found, was at rest with its bulging door and list toward the track on which the decedent's engine was moving at a point where, because of congested conditions, the clearance between trains was markedly narrow, being in this instance according to tests made after the accident not less than four nor more than six inches.

The engine was struck by this car at the place where it bulged, as evidenced by the iron having been scraped, a condition not shown on the prior inspection.

[3] The principal fact on which the court submitted the issue of negligence was the act of the defendant in keeping in service a defective car and placing it on a track at a point of narrow clearance known to be highly dangerous at all times. While from the narrow clearance —an incident to railroad operation made particularly dangerous here by the position of city streets—no inference of negligence can be drawn, Reese v. P. & R. Ry. Co., 239 U. S. 463, 36 Sup. Ct. 134, 60 L. Ed. 384, the duty nevertheless devolved on the railroad employer to exercise the care which the exigency reasonably demanded for the safety of his employe. We therefore see in the evidence enough to sustain the verdict by which the jury found that in placing an admittedly defective car at a place of admittedly great danger the defendant was guilty of negligence, unless, as urged by the defendant, lastly, the decedent had assumed the risk of such danger as an incident to his employment.

[4] Whether the decedent assumed this risk depends primarily on the character and origin of the danger. The jury might readily have found the danger not one ordinarily to be expected and one not easily to be seen and quickly comprehended. The jury did find that it had its rise in the defendant's negligence. Whether the decedent assumed the risk of the defendant's negligence depends finally upon whether the defect or disrepair involved in his negligence, and the risk arising from it, were so obvious and open that he should, as an ordinarily prudent person under the circumstances, have seen and appreciated them. Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 102, 34 Sup. Ct. 229, 58 L. Ed. 521; Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. The circumstances which govern this question include the decedent's knowledge of the great though ordinary danger of the narrow clearance; his ability to see straight ahead down the track on which his engine was moving; his inability, because of the limited clearance, to look from the side of his cab and bring the line of cars into view; the presence

of a car on the adjoining track which was in disrepair, in that it bulged at the door, and was defective, in that it leaned out of plumb—faults, though small, that together were sufficient to contract the clearance and create the danger which resulted in the accident.

We are of opinion that it was for the jury to gather from these circumstances and decide whether, under the law as charged, the decedent had assumed the risk of the danger arising from the defendant's found negligence. Gila Valley Ry. Co. v. Hall, supra; Seaboard Air Line v. Horton, supra; McGovern v. P. & R. Ry. Co., 235 U. S. 389, 401, 35 Sup. Ct. 127, 59 L. Ed. 283.

The judgment below is affirmed.