Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of FLORENCE O'BRIEN, Respondent, on Behalf of Herself and Children, for Compensation under the Workmen's Compensation Law for the Death of Her Husband, THOMAS P. O'BRIEN, v. UNITED STATES RAILROAD ADMINISTRATION (NEW YORK CENTRAL RAILROAD), WALKER D. HINES, as Director-General of Railroads, Employer and Self-Insurer.

Third Department, November 18, 1920.

**Workmen's Compensation Law — engineer making up train containing interstate car engaged in interstate commerce — effect of stipulation — jurisdiction of Commission.**

A locomotive engineer is engaged in interstate commerce where it appears that prior to the alleged injury he was making up a train in which was a car consigned to a point beyond the State, that thereafter he took said train to another point where a trunk line locomotive was to hitch onto it for the remainder of the journey, and was returning when he was discovered in an unconscious condition and died some three weeks later without regaining consciousness.

A stipulation by the parties that there was an interstate car in the train is necessarily a stipulation that interstate transportation of its cargo had begun.

The alleged injury having occurred while the deceased was engaged in interstate commerce, the claim for his death was not within the jurisdiction of the State Industrial Commission and the award should be reversed.

JOHN M. KELLOGG, P. J., and WOODWARD, J., dissent.

APPEAL by the defendant, United States Railroad Administration (New York Central Railroad), Walker D. Hines, as Director-General of Railroads, from a decision and award of the State Industrial Commission, rendered on the 5th day of November, 1919.

*Visscher, Whalen, Loucks & Murphy,* for the appellant.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent State Industrial Commission.

*Charles F. Cummings* for the claimant, respondent.

H. T. KELLOGG, J.:

The husband of the claimant was a locomotive engineer who operated a switch engine in the railroad yards of the appellant. On January 27, 1918, at about four-forty-five P. M. he was

discovered in the cab of his engine in an unconscious condition. He never regained consciousness, and died about three weeks later. Physicians have testified that his death was due to poisoning by carbon monoxide gas escaping from the firepot of his engine. At the time when he was thus found he had brought his engine unhooked from any cars into the Syracuse yards from Belle Isle station intending to return it to the round house and quit work for the day. He had taken from Salina to Belle Isle a string of twenty-three cars, among which was car G. N. 14,406. Under a bill of lading made out two days previously, or on January twenty-fifth, this car had been consigned from Syracuse to East Cambridge, Mass. As the trip from Salina to Belle Isle had taken an hour, and the trip of the light engine from Belle Isle to Syracuse had taken an hour and a half, it is apparent that the former trip accomplished something more than the mere switching and sorting of cars in a railroad yard. The train conductor said: " He switched those cars in the morning and got them on to the classification track to take to Belle Isle. After we got off the classification track, we were all done with the switching. When we left Salina, we were done with the switching. We stored the train in the Belle Isle yard." It is a fair inference that the twenty-three cars became a made up train at Salina; that when the train pulled out of Salina actual transit of car G. N. 14,406 for a point beyond the State had begun; that the train was halted at Belle Isle merely to afford a trunk line locomotive opportunity to hitch on; that the stop was a mere interruption of an interstate journey already begun by car G. N. 14,406. Moreover, the parties have expressly stipulated that this car was an interstate car. The following appears in the record: " By Deputy Commissioner Richards: You will concede that there were interstate cars in the string? By Mr. Cregg: Yes, in the string he took up to Belle Isle." As a car is interstate or intrastate accordingly as its cargo is in the course of transportation to points without or within the State, a stipulation that it is an interstate car is necessarily a stipulation that interstate transportation of its cargo has begun. Even if the stipulation is not conclusive, however, car G. N. 14,406, having begun its journey under a billing to East Cambridge, Mass., was in the course of an interstate trans-

portation when stored at Belle Isle. ( *Kinsella* v. *New York Central Railroad Co.*, 186 App. Div. 856; *O'Brien* v. *Pennsylvania Railroad Co.*, 187 id. 839.) Accordingly we have a so-called accidental injury to a locomotive engineer at a point of time when he was returning from performing an interstate service with an engine which he was·about to put up for the night. This brings the case directly within *Erie R. R. Co.* v. *Winfield* (244 U. S. 170). Indeed, that case goes one step further than is necessary here. There the engineer was engaged all day merely in *switching* interstate and intrastate cars in a railroad yard, and had actually placed his engine in the round house for the night, when in journeying across the yards towards his home he received accidental injuries from which he died. It was held that he was then in the course of an employment in interstate commerce. It follows that in the case before us the husband was thus employed and that a claim for his death was not within the jurisdiction of the Industrial Commission.

The award should be reversed and the claim dismissed.

All concur, except JOHN M. KELLOGG, P. J., and WOODWARD, J., dissenting.

Award reversed and claim dismissed.