Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ANDREW RABEE, Respondent, for Compensation under the Workmen's Compensation Law, *v.* BOSTON AND MAINE RAILROAD, Employer, Appellant.

Third Department, July 7, 1921.

Workmen's Compensation Law — interstate commerce — performance of act incidental to employment — brakeman injured while crossing tracks in yard to report for work was engaged in interstate commerce when crew to which he was attached began work in interstate commerce and he was engaged therein on day before injury — Federal Employers' Liability Act.

A brakeman, belonging to a switching crew, who, while crossing the tracks in his employer's yard from its office to the place where the crews reported for the day's work, fell and was injured, was performing an act incidental to his employment and was engaged in interstate commerce, where it appears that on the day before his injury he was switching interstate

cars and that immediately after his injury a man was substituted in his place in his crew, and that the crew began its day's work in switching a train which contained cars carrying interstate shipments, and having been so employed compensation cannot be awarded him under the Workmen's Compensation Law, but his redress must be sought under the Federal Employers' Liability Act.

APPEAL by the defendant, Boston and Maine Railroad, from a decision and award of the State Industrial Commission, made on or about the 9th day of November, 1920.

*Jarvis P. O'Brien,* for the appellant.

*Charles D. Newton, Attorney-General,* for the respondents.

VAN KIRK, J.:

The employer is the Boston and Maine Railroad. The claimant was a brakeman belonging to one of the switching crews in the employer's yard at Rotterdam Junction. Trains of cars were brought into this yard and placed on the receiving track. In these trains were mingled goods in interstate commerce and in intrastate commerce. When a train was left upon the receiving track the several cars were marked for their destination. The train was then broken up and the cars placed on the proper tracks for further transportation, and going-out trains were made up. This work was done by the switching crews. Mr. Hamilton was the head of the switching crew to which the claimant belonged, but on the day he was injured Mr. Jones had been substituted in Mr. Hamilton's place. Claimant's work began at seven o'clock in the morning. In the yard was a shanty or office, which the claimant called " our office," by which he meant the office to which the crews reported for the day's work. He was passing about six-forty-five A. M. from the company's office to " our office; " and, while he was in the yard of his employer and crossing its tracks, he fell and received the injuries on account of which his claim is made. It is not disputed that he was at the time of the injury in the service of the company and performing an act incidental to his duties as employee. The day before his injury the claimant was switching interstate cars. Immediately after his injury in the morning a man was substituted in claimant's place in his crew, and that crew began its day's work in switching a train which had

come in from Massachusetts containing cars carrying interstate shipments. The injuries were received on August 29, 1920.

The position of the appellant is that the employer was engaged in interstate commerce and the claimant was employed in interstate commerce at the time of the injury and, therefore, the claim is not within the jurisdiction of the State Industrial Commission. No answering brief or argument is presented on behalf of the State Industrial Commission or the claimant.

The employer was engaged in interstate commerce. If the claimant at the time of the injury was engaged in interstate commerce, or in work so related to it as to be practically a part of it, his redress must be sought under the Federal Employers' Liability Act. (See 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143.) No State statute can impose any other or different liability. (*Second Employers' Liability Cases,* 223 U. S. 1, 51; *New York Central R. R. Co.* v. *White,* 243 id. 188, 192; *Shanks* v. *D., L. & W. R. R.,* 239 id. 556, 558; *New York Central R. R. Co.* v. *Winfield,* 244 id. 147.) In applying this test the Supreme Court of the United States has held that employment in interstate commerce exists where a car repairer is replacing a drawbar in a car then in use in such commerce (*Walsh* v. *New York, New Haven & Hartford R. R.,* 223 U. S. 1); where a fireman is walking ahead of and piloting through several switches a locomotive which is to be attached to an interstate train and to assist in moving the same up a grade (*Norfolk & Western Ry.* v. *Earnest,* 229 id. 114); where a workman about to repair a bridge regularly used in interstate transportation is carrying from a tool car to the bridge a sack of bolts needed in his work (*Pedersen* v. *Del., Lack. & West. R. R.,* Id. 146); where a clerk is on his way through a railroad yard to meet an inbound interstate freight train and to mark the cars so the switching crew will know what to do with them when breaking up the train (*St. Louis & San Francisco Ry.* v. *Seale,* Id. 156), where a fireman, having prepared his engine for a trip in interstate commerce, and being about to start on his run, is walking across adjacent tracks on an errand within his duties (*North Carolina R. R. Co.* v. *Zachary,* 232 id. 248); and where a brakeman on a train carrying cars of both interstate and intrastate freight is assisting in placing the intrastate cars on a side

track at an intermediate station (*New York Central R. R.*
v. *Carr*, 238 id. 260).

In *Erie R. R. Co* v. *Winfield* (244 U. S. 170) the employee
was in charge of a switch engine in the employer's yard
at Croxton, N. J., and was switching freight cars about
the yard. In some the freight was interstate and in others
intrastate and in still others it was of both classes. In
concluding his work for the day the employee took his engine
to the place where it was to remain for the night and started
to leave the yard. His route lay across some tracks, and,
while passing over one, he was struck by an engine and
received injuries from which he soon died. The court held
that, in leaving the carrier's yard at the close of his day's
work, the deceased was but discharging a duty of his employ-
ment (citing *North Carolina R. R. Co.* v. *Zachary*, 232 U. S.
248, 260) and that he was employed at the time of his injury
in interstate commerce. That his employment also extended
to intrastate commerce was for present purposes of no impor-
tance; that the Workmen's Compensation Act of the State of
New Jersey (N. J. Laws of 1911, chap. 95) did not apply, and
that the case came within the Federal Employers' Liability
Act.

If the claimant, at the time of his injury, should be con-
sidered as not yet having entered upon his duties and employ-
ment, of course his claim falls; but this position is not taken
by the appellant. Under the authority of *Erie R. R. Co.* v.
*Winfield* (*supra*) it should be held that he was at the time
he was injured performing an act incidental to his employment;
and, if so, then his employment was that which the crew of
which he was a member immediately entered upon, namely,
the switching of cars carrying interstate freight. Having been
so employed compensation cannot be awarded him under the
New York State Workmen's Compensation Law, and the
award must be reversed.

All concur.

Award reversed and claim dismissed.