## T. J. MOSS TIE CO. et al. v. TANNER et al.
### No. 5970.

Circuit Court of Appeals, Fifth Circuit.
Nov. 12, 1930.

John N. Allen, of Mobile, Ala., Geo. W. Yancey, of Birmingham, Ala., and Edward J. Grove, of Mobile, Ala. (George W. Yancey, of Birmingham, Ala., Edward J. Grove and John N. Allen, both of Mobile, Ala., and London, Yancey & Brower, of Birmingham, Ala., on the brief), for appellants.

Alexander C. Birch, U. S. Atty., and William G. Caffey, both of Mobile, Ala. (Harry T. Smith and Wm. G. Caffey, both of Mobile, Ala., on the brief), for appellees.

Before FOSTER and WALKER, Circuit Judges, and HOLMES, District Judge.

WALKER, Circuit Judge.

This is an appeal from a decree confirming an award made by a deputy commissioner under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 901 et seq.), in favor of the appellee Lydia Tanner, the surviving wife of Mose Tanner, deceased. The evidence showed the following: At the time (January 13, 1928) the deceased received the injury which resulted in his death, he was employed by the T. J. Moss Tie Company, one of the appellants, to stencil an identifying mark on each of a lot of cross-ties owned by the employer which had been transported in a barge to the side of the steamer Osceola to be unloaded from the barge and loaded on the steamer for shipment, the barge then being in the Mobile river alongside and east of the steamer which was moored at the east end of a pier. The object of stenciling the ties was to provide means of identifying them in the bill of lading issued for them and to enable the carrier and consignee to distinguish them from other ties that might be included in the vessel's cargo, so that proper delivery of the ties could be made at their destination. At that time a stevedoring company was engaged in unloading the cross-ties from the barge and loading them on the steamer, and was in charge of those operations, the ties being transferred from the barge to the ship by means of chain slings in which they were lifted from the barge and hoisted over the side of the ship into her hold, the slings being operated from the ship's deck by winches. The deceased's task of stenciling ties had not been completed at noon, when, upon a signal being given, work was suspended to enable the men to get their midday meal. Two of the stevedoring company's employees who were on the barge got to the deck of the vessel by climbing hand over hand by a rope which was hanging from the vessel's deck to the barge. The deceased and two or three of the stevedoring company's employees undertook to get on the vessel, which had to be crossed to get to the shore, by being lifted in one of the slings. While the sling with the men in it was swinging over the hold of the vessel, the deceased came in contact with a hatch coaming, with the result that he fell in the hold and received injuries from which he died several days later. Evidence indicated that, but for the improper handling of the winch after the sling with the men in it had been hoisted above the vessel's deck, it would have been safer for the deceased, who was referred to by a witness as an "old man," to attempt to get to the vessel's deck in the way he adopted, than to attempt to do so by means of the rope which was used by two men who were "young and spry." When the work was temporarily suspended for the midday intermission, there was no way for the men on the barge to get from the barge to the deck of the vessel except by means of the rope hanging over the vessel's side or by means of one of the slings. A rope ladder belonging to the vessel was generally used by men in getting from a barge to the vessel's deck. When the men suspended work for dinner there was no lad-

der from the vessel to the barge, which was considerably below the vessel's deck. The deceased and his wife lived together in Mobile, Ala., from the time of their marriage in 1916, except that they went to Port Chester, N. Y., in 1923, where both of them were engaged in work for some time; but, prior to February, 1927, they returned to Mobile to live, and in February, 1927, they bought a house there; in March, 1927, because of the death of her father in Detroit, the wife went to Detroit, from which place she went to Port Chester, where she worked as a cook until she returned to Mobile in January, 1928, upon being informed of the deceased's death. The only reason for deceased's wife's going to and staying at Port Chester after her father's death was the desire of herself and the deceased to earn money to finish paying for the house they had bought. Prior to the deceased's death the wife had concluded to return to Mobile the first of February, 1928, because she and the deceased "had about got the money to pay for the home." There had been no differences between the deceased and his wife. He agreed to her going back to Port Chester to work and help pay for the house. The award was challenged on the following grounds: (1) That at the time of the deceased's injury and death the relation between him and the appellee Lydia Tanner was such that under the above-mentioned act the latter was not entitled to compensation for the former's disability or death; (2) that compensation for the deceased's disability or death was not allowable under the above-mentioned act because recovery for his disability or death through workmen's compensation proceedings could validly be provided by state law; (3) that at the time of his injury and death the deceased was not an employee for whose injury or death compensation was allowable under the above-mentioned act; and (4) that the injury which resulted in the deceased's death did not arise out of and in the course of his employment.

■ The first-mentioned ground is based upon the provision of the act that, "The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time." Section 2(16), 33 USCA § 902(16). This provision does not indicate a purpose to make a physical dwelling together of a decedent and his wife at the time of the former's death necessary to bring them within the meaning of the words "living together," when at that time there had been no es-

trangement between them and no intention on the part of either of them to sever even temporarily their marital relations. A husband and wife do not cease to "live together," within the meaning ordinarily conveyed by those words when used with reference to married persons, as a result of one of them being temporarily absent from their home while engaged in work which was undertaken with the purpose of acquiring money for use in paying for or maintaining that home. Northwestern Iron Co. v. Industrial Comm., 154 Wis. 97, 142 N. W. 271, L. R. A. 1916A, 366, Ann. Cas. 1915B, 877; Harris v. Louisiana Oil Ref. Co., 13 La. App. 416, 127 So. 40; Wright v. Bank of S. W. Georgia, 13 Ga. App. 347, 79 S. E. 184. The evidence warranted the conclusion that within the meaning of the provision in question the decedent and his surviving wife were living together at the time of the former's death, no impairment of their marital relations having occurred.

■ Under a provision of the above-mentioned act, compensation is not allowable if recovery for the disability or death through workmen's compensation proceedings may validly be provided by state law. 33 USCA § 903(a). The injury which resulted in the decedent's disability and death having occurred on the navigable waters of the United States, recovery therefor could not validly be provided by state law if at the time of his injury the decedent was doing work which had a direct relation to navigation or commerce. Nogueira v. N. Y., N. H. & H. R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754; Baizley Iron Works v. Span, 281 U. S. 222, 50 S. Ct. 306, 74 L. Ed. 819. The decedent's employer was an employer for whose liability the act provided if any of its employees were employed in maritime employment, in whole or in part, upon the navigable waters of the United States. 33 USCA § 902(4). As above indicated, the work for which the decedent was employed and in which he was engaged was done to prepare the ties for proper delivery to the vessel for shipment, to enable the carrier to issue a proper bill of lading therefor, and to facilitate a proper delivery of the ties at their destination. Such services so rendered to facilitate the performance by a ship of her duties as a carrier have a direct relation to navigation and commerce and are maritime in their nature. The C. Vanderbilt (D. C.) 86 F. 785, 789; Constantine v. The River Queen (D. C.) 2 F. 731; 1 Corpus Juris, 1275, note 4(c). The contention that recovery for the injury which resulted in the disability and

death of the decedent could validly be provided for by state law was sought to be supported by the decision in the case of Ex parte Rosengrant, 213 Ala. 202, 104 So. 409; S. C. Rosengrant v. Havard, 273 U. S. 664, 47 S. Ct. 454, 71 L. Ed. 829. It appeared from the evidence in that case that the deceased was employed in the capacity of lumber inspector, checker, and grader—his duties involving getting the lengths and sizes of lumber, and sometimes the grades—and that at the time he received the injury which resulted in his death he was on a barge which was afloat in the Mobile river engaged in checking lumber which coemployees were taking from the barge and carrying or carting to the employer's mill. It appeared that the lumber checking in which the deceased was engaged when he came to his death was a service rendered without regard to whether the lumber checked was or was not the subject of transportation on navigable waters, and that the rendition of that service was not incidental to or in furtherance of the carriage of the lumber by water or of the delivery of it from the barge upon the termination of that carriage. The purpose of the checking was to get and furnish information, not for use in any stage of the carriage by water of the lumber checked, but for use of the employer in handling and dealing with its lumber on land. That service had no such direct relation to navigation or commerce as to be maritime in its nature. The facts of the last cited case clearly distinguish it from the instant one.

■ To support the contention that at the time of his injury and death the decedent was not an employee for whose injury or death compensation is allowable under the above-mentioned act, the following provision of that act was invoked: "The term 'employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." 33 USCA § 902(3). It is apparent that one whose only connection with a barge results from his being employed by the owner of cross-ties located thereon for the sole purpose of stenciling a mark on those ties is not a member of the crew of that barge. There is no merit in the contention under consideration.

■■ In behalf of the appellants it was contended that within the meaning of the above-mentioned act (33 USCA § 902(2), the injury which resulted in the decedent's death was not one "arising out of and in the course of employment," because at the time that injury was sustained the decedent had left his place of work, and because he chose a dangerous way of leaving his place of work when a safe way was available to him. As a general rule an employee is deemed to be in the course of his employment while going to or from his place of work by the only practicable route of immediate ingress and egress. Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; Erie Railroad Co. v. Winfield, 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; 18 R. C. L. 584. There was nothing in the evidence to negative the conclusion that it was contemplated that the decedent would, if he chose to do so, leave the barge while his work was temporarily suspended during the midday intermission. This being so, his departure from the barge during that time might be in the course of his employment. Assuming that compensation was not allowable to the decedent's widow if his death resulted from his choosing a dangerous way of leaving his place of work when a safe way was available to him, we think that the evidence warranted the findings that such was not the fact, and that the injury which resulted in decedent's death was due, not to any inherent danger in the method of leaving the barge adopted by him, but to the improper handling of the winch after the sling with the men in it had been hoisted above the vessel's deck. We conclude that within the meaning of the act that injury was one "arising out of and in the course of employment."

The decree appealed from not being subject to reversal on any ground suggested, it is affirmed.