**LIBERTY MUT. INS. CO. et al. v. CAR-DILLO, Deputy Com'r, U. S. Employees' Compensation Commission for the District of Columbia et al.**

No. 9086.

United States Court of Appeals
District of Columbia.
Argued Feb. 5, 1946.
Decided April 8, 1946.

GRONER, C. J., dissenting.

Mr. Arthur J. Phelan, of Washington, D. C., with whom Mr. Edward B. Williams, of Washington, D. C., was on the brief, for appellants.

Mr. Ward E. Boote, Chief Counsel, U. S. Employees' Compensation Commission, of Washington, D. C., with whom Messrs. Edward M. Curran, U. S. Attorney, and Daniel B. Maher, Assistant U. S. Attorney, both of Washington, D. C., were on the brief, for appellee Frank A. Cardillo.

Mr. Homer S. Carpenter, of Washington, D. C., appeared on the brief as attorney for appellee Virginia C. Ticer.

Before GRONER, Chief Justice, and CLARK and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

530

This appeal brings before us for review a judgment of the District Court of the United States for the District of Columbia which affirmed a compensation award under the Longshoremen's Act.[1]

The evidence clearly showed that Walter H. Ticer had been employed for some ten years before his death on December 17, 1943, by E. C. Ernst, Inc., a corporation engaged in the electrical construction business. The Ernst firm was incorporated in, had its principal office in, and did much of its construction work in, the District of Columbia. It also had substantial contracts elsewhere, including one at the U. S. Marine Base at Quantico, Virginia, which had been in progress for several years. Ticer, who lived in the District of Columbia, was assigned with other employees to the Quantico job in 1940. He did all his work and received his pay in Quantico.

It was the custom of those employees who lived in or near Washington to drive their personally owned automobiles to a central starting point each morning. There four or five would get in one automobile and proceed to Quantico, leaving the other cars until they returned that evening, thus economizing on gasoline and oil and minimizing depreciation on the automobiles. Any employee who did not contribute a car to the "pool" paid $1 for the round trip to him whose car was being driven to Quantico.

On December 13, 1943, it was Ticer's turn to drive his car the entire distance. He was accompanied by four co-workers, two members of the car pool and two who paid him $1 each for the day's transportation. As Ticer drove his car homeward that evening and was approaching Fort Belvoir, Virginia, a truck passing in the opposite direction somehow picked up a stone from the surface of the highway. The stone was hurled through the windshield and struck Ticer on the head. From the injury so sustained, he died three days later.

Compensation for the death having been awarded to Ticer's widow by the deputy commissioner, E. C. Ernst, Inc., and Liberty Mutual Insurance Company, its compensation insurance carrier, sued to vacate the award. The District Court granted a motion to dismiss, and the employer and its insurance carrier appeal.

The position of the appellants is (1) that the conclusion of the deputy commissioner that the injury arose out of and in the course of the employment was contrary to the law and to the evidence, and (2) that the deputy commissioner did not have jurisdiction to make an award.

■ The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of employment. Ordinarily, the hazards they encounter during those journeys are not incident to the employer's business.[2] This is not an inflexible rule, however, and exceptions to it may arise either through the employer's agreement to that effect, or from the circumstances of the case from which appropriate authority implies an agreement on the part of the employer to compensate for injuries received in going to and from work.

The general rule stated in the Voehl case was recognized by this court in Ward v. Cardillo,[3] and a statement of four exceptions thereto was approved. Those exceptions are:

(1) Where the employer requires the employee to travel on the highways;

(2) Where the employer contracts to and does furnish transportation to and from work;

(3) Where the employee is subject to emergency calls, as in the case of firemen;

(4) Where the employee uses the highway to do something incidental to his employment, with the knowledge and approval of the employer.

The appellees attempt to justify the award in this case by saying that it falls within the second exception, in that E. C. Ernst, Inc., contracted to and did furnish transportation to and from work.

As a member of the Institute of Electrical Contractors of the District of Columbia, E. C. Ernst, Inc., was bound by the terms of a contract between that institute and a local union of electrical workers, of

[1] Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., as made applicable to the District of Columbia, 45 Stat. 600, Title 36, § 501, District of Columbia Code, 1940.

[2] Voehl v. Indemnity Insurance Co., 288 U.S. 162, 169, 53 S.Ct. 380, 77 L. Ed. 676, 87 A.L.R. 245.

[3] 77 U.S.App.D.C. 343, 135 F.2d 260.

which Ticer was a member. The pertinent paragraphs of the contract between the institute and the union are shown in the margin.[4] As a matter of practice, however, Rule 15(b) was not followed by the parties with respect to the work at Quantico. By an oral agreement subsequent to the formal written contract there was substituted for the obligation of the employer to transport employees engaged in work outside the District of Columbia an arrangement by which Ernst paid each employee the flat sum of $2.00 per day as transportation expense. This applied whether the employee lived in the District of Columbia, in Quantico, or at an intermediate point. E. C. Ernst, Inc., did not furnish vehicles for transportation, did not contract with others to transport its employees, did not furnish gasoline or oil, and did not specify the means or route by which employees should reach the work site at Quantico. Each employee was entirely free to select the method by which he would reach Quantico each day and by which he would return to his home at its close.

■■■■■ The right to compensation under the act depends, of course, upon the existence of the relation of master and servant at the time of the injury. The liability is based, the Supreme Court has said, "not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."[5] Continuing, the Supreme Court said, "And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a causal connection between the injury and the business in which he employs the latter— a connection substantially contributory though it need not be the sole or proximate cause. * * *"

No exact rule can be formulated from the decisions beyond the broad generality of the Voehl case that ordinarily injuries received while going to and from work are not compensable, and the category of exception set out in Ward v. Cardillo, supra. The reason for the general rule expressed in the Voehl opinion is that during the journeys to and from work, usually the master and servant relation does not exist. During the relation, the employee must go where he is told to go, must do what he is told to do, when and where he is instructed to do it. He is following, not his will, but the will of his employer; so, if he is hurt while going or doing as he has been instructed, his injury is compensable. But when the relation ends, he is again a free agent, choosing his own way, and the time and place of his own acts; if injured, there can be no compensation because there is no causal connection between the injury and the employment.

Throughout practically all the decisions we have examined, including those cited by the appellees, runs the thread of the employer's *control* over the employee as the distinguishing characteristic which indicates the existence of the relation of master and servant. For example, an employee is deemed to be in the course of his employment while going to or from his place of work by the only practicable route of immediate ingress and egress.[6] Obviously, it is so held because the location of the employer's plant forces the employee to use a single way of ingress and egress, and so the employer's control during its use is implied.

The difference between the cases so holding and the present case is manifest. Here the control of the employer over the acts and movements of the employee ended with the close of the work day at Quantico. So the master and servant relation ended then.

4 "Rule 15. (a) No traveling time shall be paid to workmen for traveling to or from any job in the jurisdiction (to or from any job in the jurisdiction) of the Union when workmen are ordered to report to the job.
"(b) Transportation and any necessary expense such as board and lodging shall be furnished for all work outside the District of Columbia.
"(c) The Employer shall pay full expenses, including traveling time, on all jobs outside the jurisdiction of the Union."
5 Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532.
6 Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Erie R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057, Ann.Cas.1918B, 662; T. J. Moss Tie Co. v. Tanner, 5 Cir., 44 F.2d 928.

532

In our view, the fact that by contract the employer paid Ticer $2.00 per day in addition to his earnings, found by the deputy commissioner to be "in lieu of the employer's supplying transportation," does not take the case out of the general rule of the Voehl case; on the contrary, the amendment of the original contract concerning the furnishing of transportation by the employer took this situation out of the scope of the second exception mentioned in Ward v. Cardillo and placed it within the general rule. As we have said, a new contract was made by the terms of which money was to be paid in lieu of furnishing actual transportation. Under that arrangement, the employee became, at the close of the day's work, entirely free of his employer's control. The relation of master and servant terminated as the work-day ended, and thereafter the employee assumed his own risk in subjecting himself to the hazards of the highway. Our opinion is that the lower court erred in sustaining the motion to dismiss. This view makes it unnecessary to consider the question of jurisdiction.

Reversed.

Judge GRONER is of opinion the decision of the lower court was correct and should be affirmed.