## DRESCHER v. WABASH R. CO.

### No. 43688.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

Motion for Rehearing or to Transfer
to Court en Banc Denied
Sept. 13, 1954.

Joseph H. Miller, St. Louis, David R. Hardy, John S. Marley, Sam B. Sebree, Sebree, Shook, Hardy & Ottman, Kansas City, for appellant.

S. L. Trusty, Guy W. Green, Kansas City, for respondent.

DEW, Special Judge.

Plaintiff, administratrix of the estate of her deceased husband George W. Drescher, brought this action to recover damages for his death arising out of a collision between his automobile which he was operating, and an engine and tender being operated by the defendant, his employer. Plaintiff recovered a verdict and judgment for $14,400, and defendant has appealed.

The action is brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The deceased was a car repairman for defendant and at about 11.:10 p. m., October 9, 1948, was driving his automobile northward on a private road in defendant's railroad yards east of Kansas City in which yards the deceased was employed. As he drove upon a three-track crossing maintained by defendant over the road mentioned, a locomotive with tender attached, coming from the east, belonging to and being operated by defendant, backed over and across the road, hitting the deceased's automobile and injuring deceased so seriously that as a result thereof he died without ever regaining consciousness. The vehicular road used by deceased at the time was the way all of the employees came

and went who worked in that end of defendant's yards. Deceased had 50 minutes yet to go to the end of his shift (4:00 p. m. to 12 midnight). Payment for deceased's services for the day, later made to his wife, was for seven hours and not for eight hours. The foregoing facts were stipulated by the parties.

It is admitted in plaintiff's brief that on the date of his death deceased "had terminated his active services for the railroad at approximately 11:00 p. m., had changed from his working clothes into his street clothes, and was leaving the premises in his automobile when the casualty occurred at approximately 11:10 p. m." It was shown that the point in the yards where deceased had been working was a half mile distant from the place of the collision, which was near a restaurant or "beanery" operated by defendant and where the men sometimes ate their meals and drank an occasional cup of coffee. Sometimes the men would drive outside of the yards and eat elsewhere. The locomotive in question was scheduled to back into the Union Station in Kansas City to hook onto a train leaving for St. Louis at 11:55 p. m. There was substantial evidence on defendant's part that the bell and whistle on the locomotive were sounded as it approached and crossed the road, and as to lights on the engine and tender and crossing signs near the tracks. There was evidence tending to show that no whistle or bell was sounded. There was evidence on the defendant's part that about a week prior to the accident, deceased had been reprimanded by a superior for not being on the job at 11:00 p. m. the night before. Deceased had neither denied nor admitted leaving the job early on that night. There was also testimony that under the rules of employment deceased was required, before quitting his place of employment and leaving the premises before the end of his shift, to get permission to do so. Employees were allowed to go to the company restaurant or "beanery" located in the yards for 20 minutes to get coffee. Other facts in evidence will be stated where necessary in the discussion of the points raised on appeal.

■ The first point assigned is that the court erred in not sustaining defendant's motion for a directed verdict at the close of all the evidence because plaintiff failed to establish that deceased was acting in the scope of his employment at the time of the accident. It is contended by defendant that it was the plaintiff's burden to establish that at the time of the accident, deceased was engaged in furthering his employer's business for which he was employed, and that clearly the evidence showed otherwise. Defendant does not claim that plaintiff would have no remedy, such as an action at common law. It does, however, assert that under the evidence in this case there was no cause of action under the Federal Employers' Liability Act. On the other hand, plaintiff takes the position that "scope of employment" under the Federal Employers' Liability Act does not require the employee at the time of his injury to be engaged in performing the actual services for which he was employed, but only in such activity as would be a necessary incident to his employment. Plaintiff insists that a trip through the employer's premises to the place of employment and his return trip through such premises to get home are necessary incidents to a servant's employment, and within reasonable contemplation of the parties.

Defendant, in its brief, points out that there was no evidence as to why deceased was at the place where he was killed nor why he was leaving and had abandoned his work. In view of the admission in the plaintiff's brief that deceased had changed to his street clothes and was "leaving" the premises in his automobile when the accident occurred, there is left no substantial hypothesis that he might have intended to eat outside the premises and return or otherwise to make himself available for further services within the remaining fifty minutes of his shift. We construe plaintiff's admission to mean that deceased was leaving the premises for the night. In fact plaintiff so construes her admission, since she urges the proposition throughout that defendant was liable under the Federal Employers' Liability Act even

though deceased was leaving the premises for the night fifty minutes before the lapse of his shift period and without permission.

Defendant greatly relies on the authority of Elliott v. Payne, 293 Mo. 581, 239 S.W. 851, 856, 23 A.L.R. 706. In that case a fireman on defendant's locomotive jumped or stepped from the moving train to a platform maintained by the defendant at one of its stations and, because of ice accumulated on the platform through the negligent maintenance by the defendant, he slipped and fell under the train and was killed. There was evidence that a regular stop had been made at another station for lunch, but that sometimes the crew members obtained something to eat at the station where the accident occurred during the short stop there. However, there was no direct evidence as to why the deceased jumped or stepped from the moving train upon the station platform. This court cited and reviewed many cases where the relationship of employer and employee under the Federal Employers' Liability Act was held to continue where the employee had stepped aside to get a drink of water, or had gone inside a building to get warm, stopped to talk with a fellow workman, had gone to a convenient place to eat or wash, or to get fresh air, hang up his coat or even to rest. But the court said that in all such cases there was some direct evidence showing the purposes for which the servant temporarily departed from his place of duty. The court noted that in some circumstances the " 'master's duty will cover the servant's trip across the premises to and from his working place' ". Some digressions, the court said, are reasonably necessary and within the contemplation of the employment. In such cases, the opinion stated, the relationship is not interrupted but continues. However, in the case there at hand it was ruled that it was the burden of the plaintiff to show that deceased was in the service of the master at the time of the injury "and if temporarily absent from his place of duty" to show that he was absent for a purpose not inconsistent with his employment. The further ruling was that there was no proof whatever of the

fireman's purpose in alighting from his place of duty on the moving train to the station platform, and the demurrer to the evidence was sustained.

It will be noted that in the Elliott case, supra, there was a complete absence of proof of any necessity for the fireman to leave his place of employment on the moving engine and to jump to the station platform, for any purpose, or that such action was incidental to the prosecution of his employer's business. In the case at bar it is not disputed that it was necessary for the deceased to traverse the defendant's yards in leaving the premises when quitting his work, and that the road used and which crossed defendant's tracks in question was the road most feasible for him to use.

In Quirk v. New York, C. & St. L. R. Co., 7 Cir., 189 F.2d 97, plaintiff, a track maintenance foreman for the defendant, chose not to remain over night at defendant's expense at the place where his work was being done, but drove in a private automobile to a nearby town, where his headquarters were located, and there continued by railroad motorcar belonging to defendant, intent upon seeing his son play basketball that evening. He was killed in a collision with another railroad motorcar. The court held that the relationship of employer and employee under the Federal Employers' Liability Act ceased when deceased left his place of employment and began his trip home in a private automobile, nor did the relationship resume when he started to complete his journey in defendant's railroad motorcar. It is apparent that the plaintiff there had meanwhile completely left his employer's premises in quitting his day's work.

In Atchison, T. & S. F. R. Co. v. Wottle, 10 Cir., 193 F.2d 628, 630, the deceased, a section hand in the defendant's employ, lived in a bunk house on defendant's right-of-way. At the close of the day's work he and a fellow workman started to drive to town in deceased's automobile to purchase groceries. While crossing defendant's tracks deceased was killed by one of the defendant's trains. The court held that

although the accident occurred on the defendant's premises, the Act could not be extended to cover conditions "not * * * incident to or an integral part of employment in interstate commerce"; that deceased was on a mission wholly his own and unrelated to his employment.

In Griffith v. Gardner, 358 Mo. 859, 868, 217 S.W.2d 519, 523, this court said: "To render an employer liable under the Act the injury must be attributable to a foreseeable risk or danger of the employment, or must have been caused while the employee was doing an act *incident to the prosecution of the employer's business*". (Italics supplied.)

In Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327, plaintiff left his place of employment with his fellow workmen thirty minutes before the scheduled quitting time and went with them to a tool house where tools were to be deposited. Plaintiff himself had no tools to return, but accompanied the others toward the tool house which was on his way home. Plaintiff was injured while so accompanying the others to the tool house. It was held that the Act was designed to be applied liberally for the protection of railroad and other employees, and that at the time and place of the accident the employee was entitled to the protection of its provisions under the circumstances in evidence.

In Sassaman v. Pennsylvania R. Co., 3 Cir., 144 F.2d 950, the plaintiff was injured while alighting from the defendant's passenger train which he had ridden to his home city from the place where he worked for the defendant, and upon quitting his work for the day. The court ruled that the Act did not apply since the plaintiff, upon leaving his place of employment, was free to go home or elsewhere, and to choose his own mode of travel, as well as the particular train. The case lacked the element of "employer compulsion". The court, however, said 144 F.2d on page 953: "In short, the condition which makes possible a claim for injuries suffered as in the course of employment but which are actually received on premises away from the employee's place of employment is the fact that the employee must, of necessity, traverse such other premises in order to reach or depart from the place of the discharge of his duties. In such circumstances, he is upon the adjacent or other premises, as a requisite of his employment, either with the knowledge and consent or the approval of his employer, at the least, legally implied from the knowable situation".

The Supreme Court of the United States in Erie R. Co. v. Winfield, 244 U.S. 170 at page 171, 37 S.Ct. at page 556, 61 L.Ed. 1057, said of the facts in that case: "In concluding his work for that day the employee took his engine to the place where it was to remain for the night and started to leave the yard. His route lay across some of the tracks, and while passing over one he was struck by an engine and received injuries from which he soon died". And 244 U.S. at page 173, 37 S.Ct. at page 557, the court said: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another".

In Shearman and Redfield on Negligence, Rev.Ed., Vol. 2, Sec. 198, pp. 454–455, it is stated: "The master is bound to use the same degree of care for the purpose of making their access and departure safe, as for the purpose of providing a safe and proper place in which the work is to be done. So far, therefore, as their road to his work lies through his premises, he is bound to use ordinary care to keep those premises in a safe condition for their entry at all times when he invites such entry; and he is bound to use such care for the purpose of enabling them to depart in safety, *whether their departure is rightful or wrongful*". (Italics supplied.)

From the above and other authorities on the subject, we find that there was substantial evidence that deceased was rightfully on the premises of his employer on the day when he was injured, having entered thereupon for the purpose of his agreed working shift beginning at 4:00 p.m.; that it was within the reasonable contemplation of the employment that deceased, after quitting his work for the night, would necessarily traverse the defendant's premises when leaving for home and would use the road in question, which was provided and maintained by defendant in its yards and was the most feasible course of exit; that the relationship of employer and employee obtained throughout the period of deceased's presence on the premises that day; that the deceased's protection under the Federal Employers' Liability Act did not cease while he was still in defendant's yards although he was leaving fifty minutes before his scheduled quitting time and without permission; that deceased's intended departure, even though fifty minutes prior to the end of his shift period, was still reasonably incidental to his employment and reasonably within the contemplation of the parties. A study of the facts in the cases cited wherein the benefits of the Federal Employers' Liability Act were denied, discloses that such cases are inapplicable under the record in the instant case. We rule that defendant's motion for a directed verdict in the case at bar on the ground that the plaintiff failed to establish that deceased was acting within the scope of his employment at the time of the accident was properly overruled by the trial court.

Defendant's next point is that the court erred in giving plaintiff's Instructions 1 and 2, and refusing defendant's Instruction F, because the court thereby failed to submit the issue whether deceased was acting within the scope of his employment, and because there was no substantial evidence to support the facts hypothecated in plaintiff's Instruction 1.

Plaintiff's Instruction 1, in substance, told the jury that it was defendant's duty to use ordinary care for the reasonable safety of the deceased while he was using the road in question to get from his working place and off of defendant's premises; that it was the duty of defendant's engineer to maintain a lookout to discover danger of collision at the crossing and to give reasonable warning of the approach of the backing tender; that· if the engineer failed to keep such a lookout and to give such reasonable notice of his·approach, and, in so doing, failed to use ordinary care, and that such failure directly resulted in the death of deceased, the verdict should be for the plaintiff.

Plaintiff's Instruction 2 submitted defendant's failure to warn of the approach of its engine and tender; to maintain sufficient lights, to look from the cab .window to the west for possible danger, failure to use ordinary care and defendant's knowledge of the unsafe crossing.

Defendant's Instruction F, which was refused, was as follows: ·"The Court instructs the jury that if you find and believe from the evidence that Drescher at the time of the collisiorí mentioned in evidence had left his work without the right to do so, and was not then engaged in any business for the Wabash Railroad Company, then your verdict must be for the defendant Wabash Railroad Company".

Since we have found that, to supply the relationship of employer and employee required by the Act, it was sufficient only that deceased be engaged in an activity incidental to his employment at the time of his injury, and since we have ruled that his peaceful traversing of defendant's premises, admittedly for the purpose of leaving them for the night was incidental to his employment and within a reasonable contemplation of the parties, we conclude that it was not necessary to submit to the jury the issue of whether, at the time of the injury, deceased was acting "within the scope of his employment". Instructions 1 and 2 were not improper because of such omission.

Since defendant's Instruction F required the jury to find against the plaintiff if it found he had left his work without the right to do so and was not engaged in business for the defendant at the time, we believe that instruction was properly refused for the reasons heretofore given.

■ As to defendant's second complaint of plaintiff's Instruction 1, namely, that the facts therein hypothecated were not supported by the evidence, witness Silvers, a fellow workman of the deceased's testified for the plaintiff that he positively saw deceased drive toward the crossing; that he was watching the taillights of deceased's car and saw them burning when he heard the crash. He was then standing about 300 feet from the crossing. He heard the crash but heard no whistle or other signal from the engineer before the crash. The collision and death at the time and place of the occurrence were not disputed.

Defendant's engineer testified that he saw an automobile approach the tracks from the south and saw its headlights go out when it was within 40 or 50 feet from the crossing; that the first he knew of the collision was when something hit his engine. Thus there was substantial evidence that during deceased's approach to the crossing and up to and including the moment of the impact, the taillights of his car were lighted, and a reasonable inference obtains that the engineer failed to maintain a sufficient lookout for the danger of collision. The other material facts hypothecated in Instruction 1 were justified by the evidence. We hold that the Court did not err in giving plaintiff's Instructions 1 and 2, and in refusing defendant's Instruction F.

Finding no substantial error affecting the merits of the action, the judgment is affirmed.

STONE, Special Judge, and LEEDY, Acting P. J., concur.